## HOVEY & BROWN, Respondents, v. EDWARD AARON, Appellant.

### Kansas City Court of Appeals, November 16, 1908.

1. **REAL ESTATE BROKER: Commission: Sale by Other Broker: Instructions.** The fact that the landowner of his own motion or by another broker may sell for a less consideration than the one he authorized the agent procuring the purchaser to accept, will not deprive the latter of his right to commission on the amount of the proceeds received at such sale; and instructions relating to such sale are set out in the opinion and condemned.

2. ————: ————: ————: **Disclosing Purchaser's Name.** A landowner is not justified in recognizing one broker as the procuring agent simply because the other broker did not disclose to him the fact that he was negotiating with the same purchaser, since it is immaterial whether the broker disclosed the name of the purchaser prior to the closing of the sale.

3. ————: ————: ————: **Instructions: Appellate Practice.** All instructions are to be read together, but where it is still apparent that a prejudicial false doctrine is injected into the case the court must assume that the jury was misled.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*M. B. Aaron* for appellant.

(1)  The defendant's instructions 6, 7, 8, and 9, are correct.  Wolf v. Rosenberg, 67 Mo. App. 403; Crowley v. Summerville, 70 Mo. App. 376; Heydon v. Grillo, 26 Mo. App. 289; Heydon v. Grillo, 35 Mo. App. 650; Ramsey v. West, 31 Mo. App. 676; Stinde v. Scharf, 36 Mo. App. 15; McGuire v. Carlson, 61 Ill. App. 395; Blodgett v. Sioux, 63 Ia. 606; Mears v. Stone, 44 Ill. App. 444; Francis v. Eddy, 49 Minn. 447; Blackwell v. Adams, 28 Mo. App. 61; Zeidler v. Walker, 41 Mo. App. 121; Harkness v. Briscoe, 47 Mo. App. 196; Campbell v. Van Stone, 73 Mo. App. 84; Whitcomb v. Bacon, 170 Mass. 479; Sibald v. Bethlehem, 83 N. Y. 378; Ward v. Fletcher, 124 Mass. 224; Glasscock y. Van Fleet, 100 Tenn. 603; Seivers v. Griffin, 14 Ill. App. 63; Tinges v. Moale, 25 Md. 480; Harwood v. Triplett, 34 Mo. App. 237; Carlson v. Nathan, 43 Ill. App. 364; Livezy v. Miller, 61 Md. 336; Crowinshield v. Foster, 169 Mass. 237; Freedman v. Havenejer, 37 N. Y. App. Div. 518; Feldman v. O'Brien, 23 Misc. (N. Y.) 341; Cathcart v. Bacon, 47 Minn. 34; Getzler v. Boehm, 16 Misc. (N. Y.) 390; Mittingly v. Pennie, 105 Cal. 514; Flynn v. Jordal, 124 Ia. 459; Higgins v. Hermè, 74 Mo. App. 86; Lawrence v. Weir, 3 Colo. App. 401; Baars v. Hyland, 65 Minn. 150; Walton v. McMarrow, 175 N. Y. 493; Glenn v. Davidson, 37 Md. 365; Stewart v. Woodard, 7 Kan. App. 633; Scott v. Loyd, 19 Colo. 401; Bowser v. Mick, 29 Ind. App. 49; Stauffer v. Bell, 99 Ia. 545; Stinde v. Blesch, 42 Mo. App. 587; Higgins v. Miller, 109 Ky. 209; Goin v. Hess, 102 Ia. 140.  (2)  The instructions in question are not objectionable on account of ignoring

the principle of procuring cause, because taken with the other instructions and construing them as a whole, that issue was fully and fairly presented to the jury. Blake v. Stump, 73 Md. 160; French v. McKay, 181 Mass. 485; Walton v. Cheesebrough, 167 N. Y. 606; Bickart v. Hoffmann, 19 N. Y. Supp. 472; Dougherty v. Railroad, 97 Mo. 647; Gordon v. Burris, 153 Mo. 223; Muelhausem v. Railroad, 91 Mo. 332; Fisher v. Heizberg Co., 77 Mo. App. 108; Swann v. Leellman, 12 Mo. App. 583; Owens v. Railroad, 95 Mo. 169; Deweese v. Iron Co., 54 Mo. App. 476; Bank v. Hatch, 98 Mo. 376; Holliday Klotz L. & L. Co. v. Tie Co., 87 Mo. App. 167; Perrett v. Kansas City, 162 Mo. 238. (3) The verdict is for the right party and should not have been disturbed by the trial court. State ex rel. v. Benedict, 51 Mo. App. 642; Randle v. Railroad, 65 Mo. 325; Daniel v. Atkins, 66 Mo. App. 342; Muldrow v. Railroad, 62 Mo. App. 431; Fidelity & Dep. Co. v. Coldin, 83 Mo. App. 204; Bowman v. Lickey, 86 Mo. App. 47; Wagner v. Edison El. & Ill. Co., 82 Mo. App. 287.

*Meservey & German* for respondents.

(1) Instructions numbered 6, 7, 8, and 9, given to the jury on the part of the defendant, were each erroneous in that they eliminated from the consideration of the jury the question as to whether or not plaintiffs were the procuring cause of Braley's purchasing the property from the defendant. (2) Each of these instructions contain vital error. They are not the law. Crone v. Trust Co., 85 Mo. App. 601; Tyler v. Parr, 52 Mo. 250; Wright v. Brown, 68 Mo. App. 577; Goffe v. Gibson, 18 Mo. App. 4; Stinde v. Blesch, 42 Mo. App. 578; Grether v. McCormick, 79 Mo. App. 325; Cunliff v. Hansman, 97 Mo. App. 467; Brennan v. Roach, 47 Mo. App. 290; Hogan v. Slade, 98 Mo. App. 50; Sallee v. McMurray, 113 Mo. App. 253; Glade v. Mining Co., 107 S. W. 1002.

JOHNSON, J.—Plaintiffs, who are partners in the business of real estate agents, brought this suit to recover a commission alleged to be due them from defendant. The verdict of the jury was for defendant, but the court sustained the motion for a new trial filed by plaintiff "because of error committed by the court in giving to the jury defendant's instructions numbered 6, 7, 8 and 9," and defendant appealed.

Material facts appearing in the evidence introduced by plaintiff are as follows: In January, 1905, plaintiff, Hovey, learning that defendant had just purchased a ten-acre tract of land on the Belt Railway near Kansas City, interviewed defendant for the purpose of obtaining employment to sell the property as defendant's agent. He testified: "I asked him if he bought the property—he said that he had. I asked him if he wanted to sell it —he said yes, if he could make a profit on it he would be very glad to sell it. I asked him what he thought would be a fair price on it—what price he would put on it—he said he would take $30,000 for it. I then told him we were operating in that particular neighborhood and I would be glad to handle it for him. He said if I could sell it for $30,000 to go ahead and sell it—and we talked about different things there that I don't remember in detail, but finally Mr. Aaron asked me in case I sold the property, what my commission would be for selling it. I told him the usual commission of two and a half per cent. Well, that was about the end of the conversation at that time, as near as I can remember. . . . He said that he owed, as near as I can remember, $16,000, on the property, and that he would like to get his equity out in cash. . . . And then I told him I would like to know, if he couldn't get that cash payment if he would take less. He said he thought it was good security and if I could get as much as $8,000 cash, he would take the balance of it back on the prop-

erty in the shape of a second mortgage.  Q.  That would
be $6,000?  A.  Yes, sir."

Thus employed, plaintiffs exerted themselves to find
a purchaser.  They had negotiations with several per-
sons who appeared able to buy on the terms proposed,
introduced one of them to defendant as a prospective
buyer, and disclosed the name of another in the course
of an attempt to induce defendant to reduce the cash
payment from $8,000 to $5,000.  Finally, plaintiffs be-
gan negotiations with Mr. Braley, a lawyer in Kansas
City, and succeeded in interesting him in the property.
We state what occurred between plaintiffs and Braley
in the language of Mr. Hovey:

"He (Braley) said, 'Mr. Hovey, Mr. Brown was
telling me about two weeks ago of a piece of property on
the Belt Line Railroad of about ten acres that you had
for sale for $30,000—I would like to know something
about it.'  I went on and described it to him, and he
asked me about the price—he asked me if $30,000 was
the low dollar—I said yes, that is the low dollar that
will buy it.  He said he would like to go out and see it.
I said very well, when will you go?  He said, I will go
out with you this afternoon.  .  .  .  There was about
eight inches of snow on the ground, and Mr. Braley and
I walked up to this place, we walked down in the ten
acres and walked into the ravine with the snow up to
our knees—we were two hours out there in the snow.
When we got home—we both lived on the same street—
just opposite each other—I asked Mr. Braley what he
thought of the ten acres.  He said he would think the
matter over and would let me know Monday.

Q.  "Now, Mr. Hovey, right there, while you were
out there with Mr. Braley, did you see C. D. Parker's
sign on the ground?  A.  Yes, sir, and Mr. Braley said,
'I see that C. D. Parker & Co. have this for sale.'

"Q.  It is frequently the case that several real es-

tate firms have the same property for sale? A. Very frequently. Then Mr. Braley asked me what the taxes on this piece of property were. I told him I didn't know. Then he asked me about these sewers that he saw—he saw a sewer up on the right of way—he said 'do you know whether these sewer taxes are all paid or not?' I told him I didn't know. He said on Monday I will go down to the city hall and make some investigation as to what city taxbills there are out there and I will let you know. Nothing more was said until Monday morning. I called up Mr. Braley at his residence and asked him if he had made any decision about this. He said no, I am going to look up these taxes all right. Nothing more was said about it until Tuesday morning, I called Mr. Braley up over the telephone at his residence and asked him if he had decided about the Belt Line ten acres. Mr. Braley said, 'I bought it yesterday.' "

It appears from Braley's testimony that when he returned from inspecting the property with Hovey, he intended to buy it on the terms offered if he could not get a better offer. He went to the city hall, obtained the desired information relative to the taxes and then started for plaintiff's office to close the transaction. On his way there, he remembered seeing the sign of C. D. Parker & Co. on the property and it occurred to him that Parker & Co. might be able to offer him a better price than plaintiffs had given him. Braley testified:

"I went to Mr. Parker and asked him what his price was on that ten-acre tract out there. I won't be positive whether he told me $30,000 at first or not, but I know very soon he said 'I can sell it for $29,000, and I told him that a firm of real estate agents had shown me the property and they were neighbors of mine and friends and I disliked very much to trade through anybody else, but that they had said $30,000 was the least that would buy the property, but, I said, if that was so, and

he could sell the property cheaper, I saw no reason why I shouldn't deal through him. And he said he could make it $29,000 and $6,000 cash. The question as to the second incumbrance and the interest on it was something that he couldn't decide—whether it would be five or six per cent—that he would see the owner. At that time he didn't tell me who the owner was, but the question whether the owner would take five per cent on the second incumbrance was talked of and he said he would telephone him, and he telephoned me about 2 o'clock and I think made an engagement for me to come down to the office at either three or half past three and close up the deal, and I came back. I don't think that I mentioned to him that day Hovey & Brown—I said 'real estate agents within half a block of here,' he said 'in the first floor of the American Bank building?' and I said 'Yes, they are the parties.' "Q. Hovey & Brown never told you the owner's name, did they? A. No, they didn't tell me the owner, they simply said he was a chicken man. "Q. And you didn't know who it was from that description? A. No, sir. "Q. And you never went to the owner, did you, before the deal was closed and the contract was entered into, and had never seen the owner, had you? A. No, sir."

The sale was closed by Parker and defendant executed and delivered a deed to Braley. The consideration of $29,000 was paid by Braley assuming the payment of the debt on the property of $17,500, paying $6,000 in cash and giving his note to plaintiff for $5,500 secured by a second lien on the property. Defendant paid Parker a commission of $600 for making the sale, refused to pay plaintiffs anything, and this suit followed.

The evidence introduced by defendant is to the effect that plaintiffs were not employed as his agents nor did they assume to act in that capacity. It is conceded plaintiffs did not inform defendant of their negotiations with Braley nor introduce Braley to him. Further, it

appears beyond question that Parker had been employed by defendant to sell the property for $30,000, and that Braley came to him and began by telling him that he (Braley) had been negotiating with other agents. Parker states he "made a guess" that Hovey & Brown were the agents who had been dealing with Braley and, thinking that he had the exclusive agency, "got busy" and reduced the price $1,000 to bring the deal to a quick conclusion.

The instructions given the jury at the request of plaintiffs are not criticised by defendant and we find they correctly present the issues from the standpoint of plaintiffs. The first five instructions given at the request of defendant also are free from error. They tell the jury, in substance, that plaintiffs to recover must show to the satisfaction of the jury that they were employed by defendant and procured a purchaser "ready, able and willing to purchase on the terms upon which the plaintiffs were authorized to sell." The instructions given at the instance of defendant, which the court, on the hearing of the motion for a new trial, concluded were erroneous, are as follows:

(6)  "The court instructs the jury that any owner of real estate may employ several brokers and may au: thorize them to sell upon different terms, and if you find and believe from the evidence in this case that the plaintiffs were limited in their authority to $30,000, and they were unable to procure a purchaser ready, able and willing to purchase for said sum, and that another broker negotiated the sale of the property for $29,000, then in the absence of collusion or bad faith on the part of the defendant, even though the sale was made to the person whose attention was first called to the property by the plaintiffs, the plaintiffs cannot recover, and your verdict should be for the defendant.

(7)  "The court instructs the jury that if you find and believe from the evidence that the defendant em-

ployed plaintiffs to find a purchaser of the property in question for the sum of $30,000, and if you further find from the evidence that the plaintiffs were not authorized to sell said property for a less sum than $30,000, and that their authority was limited in that respect, and if you further find from the evidence that the plaintiffs did not procure a purchaser ready, able and willing to purchase said property for $30,000, then the plaintiffs cannot recover, and your verdict should be for the defendant.

(8) "The court instructs the jury that if you find from the evidence that the defendant agreed with the plaintiffs to pay them a commission of 2 1-2 per cent if they would procure a purchaser of the land described in the petition, at the price of $30,000, and if you further find from the evidence that the plaintiffs failed to procure a purchaser able, ready and willing to pay said price of $30,000; and if you further find from the evidence that the plaintiffs' negotiations with Mr. Braley were not concluded and that Mr. Braley voluntarily broke off his negotiations with the plaintiffs, and that Mr. Braley afterwards purchased the same property through another agent of the defendants, and you further find that there was no bad faith on the part of the defendant, the court instructs you that the plaintiffs cannot recover, and you should find for the defendant.

(9) "The jury is instructed that if the defendant employed the plaintiffs to find a customer and that the defendant set $30,000 to the plaintiffs as the lowest selling price, and the plaintiffs never procured a purchaser ready, willing and able to buy for such price, and the property was later sold for a less sum by another broker, then, in the absence of collusion or bad faith on the part of the defendant, the plaintiffs are not entitled to commission, and the jury will find for the defendant. And this is the law even though the plaintiffs first

brought the attention of the property to the person to whom the sale was finally made by the other broker."

The principle of law declared in all these instructions is not supported either by reason or the weight of authority. Plaintiffs' evidence very strongly tends to show that they were employed by defendant and that their efforts were the procuring cause of the sale to Braley. All of the credible evidence is to the effect that plaintiff alone discovered Braley as a buyer and in him found one who was ready, able and willing to buy on the terms proposed by plaintiffs; but on the hypothesis of fact that Braley was not willing to buy at the price plaintiffs were authorized to offer, but for one thousand dollars less, it would result in the grossest injustice should we say, as was said in the instructions under consideration that such fact would preclude a recovery by plaintiffs. If defendant, while plaintiffs' authority to sell stood unrevoked, chose to sell the property, either in person or through another agent, to a customer procured by the efforts of plaintiffs for a less price than that which plaintiffs were authorized to offer, that was his privilege, but he will not be permitted to reap the fruits of plaintiffs' labor and then deny them their just reward.

We decided this question recently in Glade v. Mining Co., 129 Mo. App. 443, where we said, "the fact that defendant on its own motion made a sale for a less consideration than it authorized plaintiff to offer did not deprive the latter of his right to a commission on the amount of the proceeds actually realized. [Nichols v. Whitacre, 112 Mo. App. 692; Grether v. McCormick, 79 Mo App. 325; Larow v. Bozarth, 68 Mo. App. 407.] To the same effect is the opinion in Hogan v. Slade, 98 Mo. App. 44: "If the owners chose to close a deal to Hogan's customer, Greenwood, through other agents and at a lower price than was named to Hogan, while the latter's agency was unrevoked and he was still work-

ing with his customer at the price named to him, they must pay Hogan his commission; otherwise any real estate agent who had borne the burden and heat of the day in working up a sale might have his reward snatched from him at the eleventh hour by his principal empowering some one else to sell at a smaller price. Such is not the law. [Brennan v. Roach, 47 Mo. App. 290; Wright v. Brown, 68 Mo. App. 577; Tyler v. Parr, 52 Mo. 249; Reynolds v. Tompkins, 23 W. Va. 229.]"

There is no merit in the suggestion of defendant that he was justified in recognizing Parker as the agent who procured the purchaser because plaintiffs did not disclose to him the fact that they were negotiating with Braley. In McCormack v. Henderson, 100 Mo. App. 647, this court, speaking through Judge BROADDUS, said: "Defendant has cited numerous decisions which he claims are to the effect that the agent must disclose the customer's name to the principal, among which are Hayden v. Grillo, 35 Mo. App. 650, and Stinde v. Scharff, 36 Mo. App. 15. These two cases do not support his claim. On the contrary, as to cases like the one at bar, the appellate courts of this State hold that it is immaterial whether the agent discloses the name of the purchaser prior to the time of closing the sale. [Millan v. Porter, 31 Mo. App. 563; Tyler v. Parr, 52 Mo. 250; and Goffe v. Gibson, 18 Mo. App. 4.]"

In Glade v. Mining Co., supra, we reiterated the rule thus stated and we consider it too well settled to require further discussion.

Nor do we sanction the contention of defendant that the error in the instructions under review was cured in the other instructions given. It is true that all the instructions are to be read as a whole, but with this done, it still is apparent that a false doctrine was injected into the case which was highly prejudicial to

plaintiffs. We must assume that the jury was misled by the error. The court was right in granting a new trial. The judgment is affirmed. All concur.