**JOSEPH · NORWOOD v. C. HAYDEN DAVIS and MABEL E. DAVIS, his wife; JOHN HAYDEN DAVIS, a single man; RAY A. HOSE and MARGARET C. HOSE, his wife; MATILDA HOSE, a widow, individually and as Trustee; HARRY SIMBERG and BENNIE SIMBERG, his wife; and THE MIAMI BEACH FIRST NATIONAL BANK, a Florida Corporation.**

28 So. (2nd) 872                    June Term, 1946
December 10, 1946                   Division B
Rehearing denied February 21, 1947

*Gramling & Gramling, Sydney L. Weintraub* and *E. F. P. Brigham,* for appellant.

*Hoffman & Durant,* for appellees.

BROWN, J.:

The appellant Joseph Norwood filed a bill in the Circuit Court for Dade County against C. Hayden Davis and his associates, consisting of four other persons, non residents of Florida. These five defendants were the owners of the Broadripple Hotel in Miami Beach, Florida. C. Hayden Davis held a power of attorney from his associates giving him full authority to sell and convey the Hotel. Two of the defendants, Harry Simberg and wife, were the purchasers of the Hotel and the Miami Beach National Bank was also made a defendant because it was the escrow agent holding some of the purchase money when the bill of complaint was filed. The bill of complaint sought the recovery of a real estate commission for about $17,000.00 which the plaintiff alleged was due and

owing to him by the defendant C. Hayden Davis and his Associates. The bill sought an equitable garnishment against the purchase money funds held by the Bank because, as was alleged, all the owners and sellers were non residents of the State and owned no other property within the State or within the jurisdiction of the court.

An answer was filed to the bill as amended, in which answer among other things it was alleged that the plaintiff was employed to effect a sale of the Hotel property for a price and upon terms satisfactory to the defendant sellers and that as the plaintiff did not do this he was not entitled to his commission. The answer also alleged that the bill was without equity as the plaintiff had an adequate remedy at law.

The case was referred to a master and a large amount of testimony was taken and exhibits filed before him. The master in his report found that the court of equity had jurisdiction of the parties and of the subject matter. As to this portion of the master's report no exception was filed by either party. But the master found against the plaintiff on the merits and the master's findings were approved by the chancellor in his final decree and the cause dismissed. From this decree the plaintiff took this appeal.

The bill alleged that defendant C. Hayden Davis, acting for himself and the other owners of the Hotel, employed the plaintiff to find a purchaser for the Hotel who would purchase the same at a price and upon terms satisfactory to the defendants, or to C. Hayden Davis as their duly authorized representatives, and that if a sale to such perchaser was effected, the sellers would pay the plaintiff five per cent of the selling price out of the down payment of the cash proceeds of the sale. It was further alleged that the plaintiff found, and produced to the defendant C. Hayden Davis, defendant Harry Simberg, who bought the Hotel from the defendant Davis on January 13, 1944. That the plaintiff was entitled to receive his commission from the purchase money on part of it, which was held by the defendant bank. The defendants allege that the plaintiff agreed to consummate a sale and that his efforts had nothing to do with the purchase of the Hotel by Harry Simberg.

Upon this issue a great deal of testimony was taken. Based upon the plaintiff's verified bill of complaint the Circuit Court enjoined the defendant bank from paying out the balance of the purchase money held in escrow, which injunction was released by stipulation of counsel after the defendant Simberg deposited $18,000.00 with said bank to stand in lieu of the balance of the purchase money which was transmitted to the defendant sellers at Springfield, Ill., Simberg having made an indemnity agreement with the sellers to indemnify them against any real estate broker's commission.

The evidence showed that the plaintiff made diligent efforts to produce a purchaser or sell the property for Mr. Davis at a price and upon terms satisfactory to him, he, Davis, having agreed to pay the plaintiff broker 5 per cent of the sale price for so doing. He carried Mr. Simberg, who by the way was a wealthy resident of Miami Beach, up to the Hotel and showed him the Hotel and the Hotel property from the outside while the Hotel was still in the hands of the Army. Shortly thereafter it was released by the Army, plaintiff again took Simberg to the Hotel and they made a thorough inspection of the Hotel both inside and outside. He also told him that the asking price for the property was $375,000.00 but that Mr. C. Hayden Davis might see fit to sell for a less sum. He pointed out to Simberg the advantageous location of the Hotel and all of its excellent points, and while Simberg pretended to be indifferent we think the evidence shows that he was very much impressed. A little later on when Mr. C. Hayden Davis came down from Illinois at plaintiff's request, plaintiff introduced Simberg to Mr. Davis. Davis finally came down on his price to $340,000.00, and Simberg made Davis an offer of $325,-000.00 net, without any real estate commission. This offer was conveyed to Davis by two real estate brokers who were associates of Simberg, and who claimed no commission. Davis accepted the proposition to sell the property to Simberg for $325,000,000.000 net to him, Davis, and required Simberg to agree in the contract of sale, which was drawn up the next day, that he, Simberg, would indemnify Davis against any real estate agent's commission. One of these agents that Simberg brought in testified that he told Mr. Davis that Simberg was going to give him and his associates "a piece of the

Hotel" in payment of their commission—to-wit—10 per cent of the equity in the property which would make their commission worth about $12,500.00 However, the testimony on that point was very vague. They were, as we see it, really acting for Simberg, not Davis.

After a careful study of all the testimony we are convinced that this sale was really procured by the efforts of plaintiff Norwood. Other testimony indicated that Simberg did not pay any commission whatever, whereas plaintiff Norwood procured the customer for Davis, sold him on the Hotel, and then the customer and Mr. Davis got together and closed the deal on the terms above stated by which Mr. Simberg would indemnify and save harmless Davis and his associates from any real estate broker's commission. Davis told Simberg that Norwood would probably feel that he was entitled to a commission.

Simberg was put into possession of the property, the deed from Davis and his co-owners was to be deposited at the bank to be held in escrow until the date of the closing and Simberg was to pay the additional monies to the bank. The agreement also provided that if Simberg failed to pay the additional monies to the bank or if for any reason the deal was not closed by the bank, the money which was received by C. Hayden Davis ($45,000.00 paid in cash at the time of the contract) was to apply as rent for the Hotel during that year. When this suit was filed Simberg was in possession of the Hotel under the agreement. The balance of the cash purchase price and the mortgage, which was executed by Simberg, was in the bank, and the deed from Davis and his co-owners was also in the bank, all held in escrow by the bank for the purpose of closing the deal on the day following the filing of this suit, at which time Davis, who had employed this appellant, had left the State and he had no other property in the State except said money which was in the bank. According to the testimony of plaintiff Norwood, the contract of employment between Davis and himself provided that Norwood would be entitled to his commission if and when the sale was consummated.

If the sale had been consummated at the price of $340,000.00, which Davis finally came down to in his talks with Norwood, the latter's commission would have amounted to

$17,000.00, which would have left Davis $323,000.00 net. But by selling to Simberg at $325,000.00 net the commission was reduced to $16,250.00.

While there is some conflict in the testimony of the various witnesses, we are of the opinion that the weight and probative force of the evidence leads to the conclusion that Davis was liable for the payment of a commission of $16,250.00 to plaintiff Norwood and that he must have realized this himself because he required Simberg to agree in writing to indemnify him against the payment of any real estate commission.

In this connection see Lowe v. Crawford, 97 Fla. 673, 122 So. 11; Cleveland-Cliffs Iron Company v. Gamble, 201 Federal 329; Harvey et al. v. Aaron, 133 Mo. App. 573, 113 S.W. 718 and Moss v. Sperry, 140 Fla. 302, 191 So. 531.

A careful study of the entire record convinces us that the decree appealed from should be reversed with directions for the entry of a decree consistent with the foregoing opinion.

It is so ordered.

CHAPMAN, C. J., THOMAS and BARNS, JJ., and HARRISON, Associate Justice, concur.

This opinion was prepared by Mr. Justice BROWN before his retirement as a Justice of this Court and has since been adopted by the Court as the opinion and judgment of the Court.