J. C. McCRAY & SON, Defendants in Error, v. AARON PFOST, Plaintiff in Error.

**Kansas City Court of Appeals, June 4, 1906.**

1. **REAL ESTATE BROKER: Agency: Revocation: Agent's Interest.** The principal ordinarily may revoke an agency, but if the agent has incurred expense the principal will not be permitted to terminate it.

2. ————: **Earning Commission: Written Contract.** A real estate broker is entitled to compensation when he finds a purchaser ready, willing and able to purchase on the authorized terms, or procures a valid written contract containing terms which the owner may enforce, if necessary.

3. ————: ————: **Producing Purchaser.** To produce a purchaser it is not necessary to exhibit him in person, but to inform the defendant that there is such a purchaser.

4. ————: **Price: Wife's Willingness: Contract.** When the question of price is submitted to the jury the finding concludes the party; and the wife's unwillingness to sign the deed is no defense to the owner unless he has so contracted, which is a question of fact for the jury.

Error to Caldwell Circuit Court.—*Hon. Joshua W. Alexander,* Judge.

AFFIRMED.

*William McAfee* and *Crosby Johnson & Son* for plaintiff in error.

(1) Verbal authority is sufficient to authorize an agent to sell the real estate of his principal. Such authority may, however, be revoked at any time, with or without reason therefor. The authority of plaintiffs to act as agents of defendant in the sale of his land was by the defendant revoked long prior to date of alleged sale. Glover v. Henderson, 120 Mo. 367; State ex rel. v. Walker, 88 Mo. 279; Burk v. Priest, 50 Mo. App. 310; Green

v. Wright, 36 Mo. App. 298; Gatty v. Sack, 19 Mo. App. 470. (2) Before a real estate agent will be entitled to recover compensation for the sale of his principal's land he must show that he has fully and fairly and in good faith performed every condition on his part, and that he made the sale in accordance with the strict terms of his agency, or, if a departure in any degree from the terms of his agency has been made, he must show that such departure was assented to or ratified by his principal, or he will not have earned his commisssion. 4 Am. and Eng. Ency. of Law (2 Ed.), 971; Nesbitt v. Hulser, 49 Mo. 383; Gelatt v. Ridge, 17 Mo. 553; Finch v. Trust Co., 92 Mo. App. 263; Hayden v. Grillo, 35 Mo. App. 647; Harwood v. Triplett, 34 Mo. App. 272. (3) A real estate agent or broker employed to sell land must, before he will be entitled to compensation, find and produce to the owner thereof a purchaser who offers and is ready, willing and able to make the purchase on the authorized terms, or to respond in damages in the event of a failure to perform his undertaking; or he must procure from such purchaser and tender to the owner a valid written contract, containing terms of sale, which the owner may enforce if necessary. Gelatt v. Ridge, 117 Mo. 553; Campbell v. Vanstone, 73 Mo. App. 84; Hayden v. Grillo, 35 Mo. App. 650; Warren v. Cram, 71 Mo. App. 638; Page v. Griffin, 71 Mo. App. 524; Chipley v. Leathe, 60 Mo. App. 20; Hackman v. Gutwiler, 66 Mo. App. 244; Vandyke v. Walker, 49 Mo. App. 381; Crowley v. Summerville, 70 Mo. App. 376; Ziedler v. Walker, 41 Mo. App. 118; Lemon v. Lloyd, 46 Mo. App. 452; Braukman v. Leighton, 60 Mo. App. 38; Huggins v. Hearn, 74 Mo. App. 86. (4) The purchaser himself, or his written contract, must be produced, because the law does not require the vender to rely on the word of the broker. It is not enough to simply disclose the name of the purchaser. In the absence of every other requirement the purchaser must be actually

produced. "Produce," says Webster, is "To bring forward; to offer to view or notice; to show." Hayden v. Grillo, 35 Mo. App. 647; Finch v. Guardian Trust Co., 92 Mo. App. 263; Wright & Orrison v. Brown, 68 Mo. App. 577; Hayden v. Grillo's Admr., 42 Mo. App. 1; Yoder v. White, 75 Mo. App. 155; Stinde v. Scharff, 36 Mo. App. 15.

*O. J. Chapman* and *J. D. Allen* for defendants in error.

(1) When a real estate broker finds a purchaser ready, willing and able to buy on the authorized terms, and the agent has done everything agreed upon, and the deal fails for the reason only that it is repudiated by the owner, the broker is entitled to his commission. Flinch v. Trust Co., 92 Mo. App. 270. (2) In Gwinnup v. Sibert — Mo. —, 80 S. W. 589, this court laid down plainly and distinctly the doctrine that "if an agent employed to sell real estate, finds a purchaser, who is both able and willing to purchase the real estate on the authorized terms, his right to commissions will not be impaired by the default of his principal in refusing to consummate the sale. Reeves v. Vette, 62 Mo. App. 440; Gelatt v. Ridge, 117 Mo. 553; Locke v. Griswold, 96 Mo. App. 527; Gaty v. Foster, 18 Mo. App. 639.

BROADDUS, P. J.—The plaintiffs allege that they were engaged in the business of real estate agents; that on the 12th day of July, 1902, defendant employed them to sell his farm situated in Caldwell county, Missouri, containing one hundred and sixty acres, at and for the price of $65 per acre, for the selling of which they were to receive a commission of $300; that on or about the 7th day of November, 1902, plaintiffs found a purchaser for said farm in the person of one Sidney R. Timbrook; that said Timbrook was ready and willing and able to pay for said farm at said price, and so informed defend-

ant and offered to close the purchase, but he refused to comply with the terms of said contract with plaintiffs and refused to sell said farm to the purchaser so produced. They ask judgment for their commission in the sum of $300. Defendant filed a general denial. The case was tried before the court without the intervention of a jury. The judgment was for the plaintiffs, from which defendant sued out a writ of error.

The evidence tended to show that on the 12th of July, 1902, defendant authorized plaintiffs to offer his place for sale until the first day of January, 1903, at sixty-five dollars per acre, and agreed, in case of sale, to allow them $300 commission; that on an intervening date, the 6th day of November, they found a purchaser at the price named, in the person of one Sidney R. Timbrook, who, after looking over the farm, asked defendant to give him some time to think over and further consider the matter before closing the deal; and that defendant acceded to the request but the said Timbrook after going to Cowgill nearby sent one E. A. King, and one of the plaintiffs to defendant's home to ask again for further time, until the following Friday, to consider the matter, with instructions if defendant refused to grant such request to them to tell defendant that he would take the place, paying him cash at $65 per acre. The evidence showed that Timbrook was well able to pay the cash for the farm; or to respond in damages if he failed to comply with any contract of purchase he might make.

The evidence upon defendant's part went to show that he authorized plaintiffs to offer his farm for sale at the price of sixty-five dollars per acre, but with the further understanding that he was to have in addition to said price pay for all improvements which he might make on the premises between said 12th day of July and the day of sale; that the time in which plaintiffs were to make the sale was not fixed but indefinite; and that it was also one of the conditions on which a sale should

be made that his wife should consent thereto; that he and his wife, after consulting about the matter, concluded not to sell, and so notified plaintiffs and requested them to take it off the market.

The evidence as to what was said when King and plaintiff, Robert McCray, went back to defendant's place on the evening of the day that Timbrook was there is somewhat conflicting. The plaintiff's evidence tended to show that King and Robert McCray told defendant that Timbrook would like a few days more to consider the matter, whereupon Mrs. Pfost said she would not sign a deed to the land; that they then said to Pfost that Timbrook had authorized them to close the deal, to which defendant responded by saying that he was willing to sell, "but my wife won't sign the deed, and what can I do?"

Defendant testified that neither King nor McCray told him that Timbrook was willing to take the land and that they only asked for Timbrook more time; that his wife was unwilling to make a deed to the land, which was the main reason for not closing the deal. Defendant was corroborated by his daughter, who was present. The record shows that plaintiffs had spent time and labor in endeavoring to sell defendant's land to persons other than Timbrook. Defendant also offered evidence tending to show that he had revoked the agency before the said 6th of November.

The record does not show that the plaintiffs offered any declarations of law. The court declared the law at the instance of defendant in two separate declarations and gave the third one with a proper qualification; and refused to give four others asked.

Defendant contends that he had revoked the agency before date when Timbrook, it is alleged, offered to buy his land. But the very authorities he cites to sustain his position are against his contention. In Glover v. Henderson, 120 Mo. 367, it is held that "While a principal may revoke an agency where the agent has no inter-

est in the subject-matter, yet if the agent has in good faith incurred expense and expended time and labor in the matter of the agency, the principal will not be permitted to terminate it . . . ." And the rule was applied to an agency of the kind in question. And such is the law as found in Burke v. Priest, 50 Mo. App. 310.

But the court, notwithstanding, gave a declaration to the effect that defendant had the right to terminate the agency in question at any time before plaintiffs obtained a purchaser for his land. We presume the court found that there was no such revocation, judging by the result. The defendant presents in his argument and brief on the law of the case, the following: "A real estate agent or broker employed to sell land must, before he will be entitled to compensation, find and produce to the owner thereof a purchaser who offers and is ready, willing and able to make the purchase on the authorized terms, or to respond in damages in the event of a failure to perform his undertaking; or he must procure from such purchaser, and tender to the owner a valid written contract, containing terms which the owner may enforce if neccessary." We think this a proper statement of the law. [Gelatt v. Ridge, 117 Mo. 553; Campbell v. Vanstone, 73 Mo. App. 84; Hayden v. Grillo, 35 Mo. App. 650, and numerous other cases.] And such was the opinion of the learned trial judge, judging by his declarations of law.

It is not claimed by plaintiff that they procured a written contract for the sale of the land, but that they did produce a purchaser who offered and was ready, willing and able to purchase. This defendant denies. This contention is that, when Timbrook sent word by King and one of the plaintiffs after his visit to the farm that he was ready to pay him his price in cash for his farm, that he was not bound to accept the offer, as Timbrook did not present himself in person with his offer. He claims, and truly, that defendant was not bound to rely on the word of his agents that they had a purchaser. But

we cannot concede to his argument that the words, "produce a purchaser," are restricted to the literal definition of Webster's dictionary, viz; "To bring forward, to offer to view or notice, to show." That is to say, that he must be actually present at the time he makes his offer. Timbrook was known to him. He had met him and had granted him further time, according to the evidence, to consider whether he would purchase or not. It was not necessary that Timbrook should be actually present. He had authorized King and one of the plaintiffs to say to defendant that he would purchase the land. And there was evidence that defendant was willing to sell at the price, but could not do so because his wife would not sign a deed of conveyance. To produce a purchaser, it was not necessary that plaintiffs should exhibit him in person to defendant. All that was required was for the defendant to know that there was such a purchaser.

Defendant's further contention, that the price offered was not that agreed on between himself and plaintiffs; that he was to have in addition the cost of such improvements, that he had made upon the land from the date of contract until the day of sale; and that he had made improvements within such time of the value of several hundred dollars. This plaintiffs denied, and as that was a traversable issue, the finding of the court is conclusive against defendant.

The apparent excuse why defendant did not accept Timbrook as a purchaser seems to have been because his wife was unwilling to sign a deed of conveyance. But this was a contingency he should have provided for in his contract. He says he did. But the court found otherwise. It was, therefore, no excuse for his refusal to accept the purchaser offered by plaintiffs.

Affirmed. All concur.