ARVIL AXSOM AND BYRL AXSOM v. ETHEL THOMPSON AND DELLA THOMPSON.—197 S. W. (2d) 326.

Springfield Court of Appeals. November 6, 1946.

*Herbert Taylor* for appellants.

VANDEVENTER, J.—This is an action by real estate brokers for their commission for procuring a purchaser for a farm in Lawrence County, Missouri. Arvil Axsom and Byrl Axsom, the appellants,

were duly licensed and authorized real estate brokers doing business under the name of Globe Realty Company at 2129 College Street, Springfield, Missouri. Ethel Thompson and Della Thompson, the respondents, owned and lived upon a farm located some thirty miles west of Springfield, Missouri in Lawrence County. Spirral Thompson, a brother of respondents, lived with them and, as their agent, transacted their business for them. J. H. Hart lived at Wichita, Kansas and was interested in buying a farm in Missouri. J. E. (Elmer) Hart was the father of J. H. Hart and lived at Skidmore, Nodaway County, Missouri.

Appellants became acquainted with respondents in September, 1944. Spirral Thompson came into the office of appellants in the late summer or fall of 1944 and listed respondents' farm for sale. No time was stated as to when the sale should be completed, and it was agreed that appellants should receive 5% commission if they procured a purchaser. Appellants agreed to try to procure a purchaser for the farm and did advertise it in the Springfield Sunday paper on October 15, 1944, and the advertisement was read by J. H. Hart in Joplin, Missouri on the same day. On the next day, Monday, J. H. Hart came to Springfield and to the real estate office of the appellants and inquired about the farm. Arvil Axsom took him to see it and, after an inspection, J. H. Hart expressed a willingness to purchase. The day of the inspection was the first time J. H. Hart had met or heard of respondents. He and his wife then signed a written offer to purchase the farm for the sum of $11,000. $500.00 to be paid upon the execution of the offer to purchase, $3000.00 upon the delivery of the deed, with the further provision "this contract to be contingent upon the securing of a loan for the amount of $7500.00 to be paid as follows: $600 per year, including interest and taxes." Taxes were to be paid by respondents except for the year 1945 and thereafter. There was the usual requirement for an abstract showing a good title. This offer was to remain open for a period of five days from its date. It was dated the 16th day of October, 1944. This offer also contained this provision: "This agreement to be closed on or before October 28, 1944, possession to be given on or before 30 days." Four or five days later, and within the five day period, one of the appellants presented this offer of purchase to the respondents and they voluntarily signed it underneath the following notation, "The above is accepted and agreed upon." Respondents and their agent and brother, Spirral Thompson, could read and write.

There were encumbrances on the property bearing 6% interest per annum, but appellants claim this was unknown to them until after the offer and acceptance of purchase. Hart deposited $500.00 with appellants as provided by the accepted offer to purchase. Later he came to appellants and asked them to get him a loan on the farm but they were unable to do so. After the acceptance of this offer, on

October 27th, the respondents had a sale of certain personal property including seventeen head of cattle at the farm, some of which were purchased by J. H. Hart and kept on the farm. Mr. Hart had immediately after the 16th of October, moved upon the farm, and later brought his own furniture. Sometime later, J. H. Hart, his wife, Spirral Thompson and respondents came into the real estate office of appellants, and Hart, in the presence of all of them told appellants that he did not intend to go through with the deal, that he could not get 5% money and that he wanted his $500.00 deposit returned to him. Appellants refused to return the $500.00 unless respondents would agree to it in writing, releasing them from any claim for damages because of its return to Hart. Respondents, in appellants' office, signed the agreement and the $500.00 was returned to Hart. This document was lost at the time of the trial, but its execution was testified to by all parties. In a few days thereafter Spirral Thompson, acting for his sisters, the respondents, came to appellants' office and told them that respondents wanted to withdraw the farm from listing, that they had decided not to sell it. On the 17th day of November, 1944, nine days after the return of the $500.00 to Hart, respondents executed a deed to the farm to J. E. (Elmer) Hart, father of J. H. Hart, which deed recited "in consideration of the sum of $1.00 and other consideration . . . ." The actual consideration was $10,450.00, which included the assumption of certain mortgages already upon the farm, and was paid by J. H. Hart to responents. This deed was filed for record at Mt. Vernon, January 31, 1945. On the 24th day of January, 1945, Elmer Hart and his wife deeded the farm to their son, J. H. Hart and his wife with a recited consideration of $1.00 and other valuable considerations . . . ," subject to all recorded liens thereon. J. H. Hart did not pay his father, Elmer Hart, anything for the execution of this deed. Elmer Hart did not pay the respondents anything for their deed to him. J. E. Hart took the title subject to the encumbrances. During all the transactions J. H. Hart continued to live upon the farm. J. H. Hart testified that respondents suggested that he take the title in some name other than his and asked him to keep the deed off the record for 30 days and that though the real consideration was $10,-450.00, respondents asked that the deed show $1.00 and other considerations, that they could thereby save the commission of $550.00. Respondents, while admitting the recited consideration was as stated, denied any responsibility for it, for keeping the deeds from record, or deeding it to J. H. Hart's father. The two deeds were executed at Mt. Vernon and appellants knew nothing about it until sometime afterwards. Before the deed between respondents and J. E. Hart was executed, respondents arrived at the purchase price by deducting the commission of $550.00 they had agreed to pay appellants from the

original price of $11,000.00, leaving $10,450.00, the amount they received for the farm.

Respondents refused to pay appellants a commission for procuring a purchaser and this action results.

Briefly, the petition recites that Arvil Axsom and Byrl Axsom were duly licensed and authorized real estate brokers and agents and that respondents, Ethel Thompson and Della Thompson, employed them to sell a certain farm in Lawrence County, Missouri for the sum of $11,000.00 or at any price fixed by the sellers under that sum for which respondents were to pay appellants 5% of the purchase price of the farm. It is alleged that appellants procured a purchaser for $11,000.00 for the price and upon the terms accepted by respondents but that they had refused to pay the commission amounting to $550.00. It is further alleged that respondents, with the intent to defraud appellants, sold their farm to J. H. Hart but had the deed made to the father, J. E. Hart, with the understanding it would later be deeded to J. H. Hart.

An answer was filed by respondents admitting that they listed the farm with appellants and that the sale was to be made and closed on or before October 28, 1944, but that the same was never made and closed according to the contract. They further denied that they at any time suggested that the deed be made to the father of the purchaser in order to defeat appellants of their commission and that they had no knowledge of any fraud, if there was fraud, and that the appellants procured a signed waiver, "of all damages and all other things that might come up which might cause the said plaintiffs herein to be out any money on this deal and these defendants did sign such a paper but they can't tell just what they did as it was not read over to them."

A reply was filed denying the execution of such a waiver. The cause was tried by the court sitting as a jury. Respondents have filed no brief in this court.

The record shows no findings of fact or conclusions of law by the trial court. It rendered judgment for defendants but the grounds upon which such decision was based are not stated. From this judgment the appellants have timely appealed.

The law is well established in this state that if property is placed in the hands of a broker for sale at a certain price, and a sale is brought about through the broker as a procuring cause, he is entitled to commissions on the sale even though the final negotiations are conducted through the owner, who in order to make a sale accepts a price less than that stipulated to the broker. The law will not allow the owner of property sold to reap the fruits of the broker's labor and then deny him his just reward.

[Julius Haller Realty Co. v. Jefferson-Gravois Bank (Mo. App.), 144 S. W. (2d) 174; McMonigal et al. v. North Kansas City Develop-

.ment Co., 233 Mo. App. 1040, 129 S. W. (2d) 75; Feinstein v. Glick (Mo. App.), 116 S. W. (2d) 141; Isaac T. Cook Co. v. Craddock-Terry Co. (Mo. App.), 109 S. W. (2d) 731; Studt v. Leiweke (Mo. App.), 100 S. W. (2d) 30; Bopp v. Jetama Inv. Co., 231 Mo. App. 815, 96 S. W. (2d) 877; Harvey v. Francisco (Mo. App.), 35 S. W. (2d) 366; Glassman v. Fainberg (Mo. App.), 35 S. W. (2d) 950; Bailey v. Hercules (Mo. App.), 22 S. W. (2d) 855; Spears et al. v. Carter, 224 Mo. App. 726, 24 S. W. (2d) 717; Braun v. Toeneboehm (Mo. App.), 238 S. W. 569; Rowland v. Progressive Inv. Co. (Mo. App.), 202 S. W. 257; Burdett v. Parish, 185 Mo. App. 605, l. c. 612, 172 S. W. 620, l. c. 622; May v. Avansino (Mo. App.), 185 S. W. 1178; Wright & Orrison v. Brown, 68 Mo. App. 577; Earls v. Alsup, 176 S. W. (2d) 830, 237 Mo. App. 819; Hodges v. Ramsey (Mo. App.), 216 S. W. 568; Glade v. Eastern Ill. Mining Co., 107 S. W. 1002, 129 Mo. App. 443.] ·

And this is the law in a great majority of the states as well as Canada and England. See Annotations 43 A. L. R. 1103, 47 A. L. R. 855, 128 A. L. R. 430.

Measuring the facts by this yardstick of the law, what do we find?

These facts stand undisputed in the record. The appellants were employed to sell or procure a purchaser for the farm owned by the respondents. This was an oral employment and no time was fixed as to its termination. Pursuant to this employment the appellants advertised the farm and this advertisement was answered by J. H. Hart who lived at Wichita and who, prior to the answering of the advertisement, had never met either appellants or respondents. He came to the real estate office of appellants by reason of this advertisement of appellants, and was taken to the farm by them, which he inspected and for the first time met respondents. He was satisfied with the farm and made a written proposition to purchase to respondents, which they accepted. This written proposal to purchase contained a provision that it should be accepted by respondents within five days from its date and it was so accepted in writing. Hart deposited $500.00 with appellants to bind the bargain. It further contained the provision that the deal should be closed on or before October 28, 1944 and that possession was to be given on or before 30 days. It contained a further provision that it was contingent upon the purchaser securing a loan for $7500.00, payable at $600.00 per year including interest and taxes. This was a contract between the purchasers, J. H. Hart and his wife, and the respondents, Ethel Thompson and Della Thompson. J. H. Hart immediately moved upon the farm, later brought his furniture to the farm and bought cattle and kept them on the farm. After moving on the farm, he never left it but was living there at the time of the trial. About the 8th day of November, Spirral Thompson, his two sisters, the respondents, and J. H. Hart and his wife came to the real estate office of appellants and Hart demanded

the return of the $500.00 that he had deposited when he made his offer to purchase. Appellants refused to return it to him unless respondents would agree to it in writing, which they did. Nine days later respondents executed a deed to the farm to Elmer Hart, father of J. H. Hart, reciting a consideration of $1.00 and other considerations. Elmer Hart paid nothing to respondents for the deed but J. H. Hart paid the consideration. The actual sale price of the farm was $10,450.00, which was arrived at by deducting the 5% commission from the original price of $11,000.00. The deed was kept off the record until the 31st day of January, 1945. On the 24th day of January, 1945, Elmer Hart and his wife executed and delivered to J. H. Hart and his wife a warranty deed to the farm and for this deed no consideration was actually paid. These two deeds were executed at Mt. Vernon without the knowledge of appellants but were discovered by them sometime later. Sometime after the return of the $500.00 to J. H. Hart and before the execution of the deed to Elmer Hart, Spirral Thompson, representing respondents, came into appellants' office and told them that respondents wished to withdraw their farm as they had decided not to sell it. It was the understanding of all parties that J. H. Hart was the actual purchaser.

Respondents' answer, as a defense, asserts that the deal was to be closed on or before October 28 and therefore appellants should not recover. But it will be observed that that provision was in the contract between the purchasers and the respondents and was not a contract of appellants. It could not be a defense anyway for it was clearly waived by a later acceptance of the purchasers by respondents. As a further defense, respondents plead in their answer a waiver of any damages that might arise out of the deal but the evidence clearly shows that this was merely an agreement for the return of the $500.00 to J. H. Hart. There is no evidence in the record that appellants waived any commission that they were entitled to if they produced a purchaser to whom the farm was sold. The attempted revocation by Spirral Thompson of the contract with the appellants was no defense for two reasons: In the first place, the attempted revocation of the contract with the appellants was not pleaded and the same being a special defense must be specially pleaded in the answer before it can be availed of as a defense. [Glassman v. Fainberg, supra; Studt v. Leiweke, supra; Annotation, 144 A. L. R. 694; Bowes v. Thomas, 191 Okla. 655, 132 Pac. (2d) 933; 144 A. L. R. 692; Garber v. Yeend (Ala.), 17 So. (2d) 874.]

In the second place, the appellants by the production of a purchaser who was able, ready and willing to purchase the farm had acquired such an interest in the transaction, that it could not be destroyed by an attempted revocation of the contract. After the brokers have shaken the tree, the sellers cannot run up and bear away the fruit without being liable for the brokers' commissions. [Green et al.

v. Cole, 103 Mo. 70, 15 S. W. 317; 12 C. J. S., p. 50 et seq., Sec. 17; 8 Am. Jur., p. 1068, sec. 143; Restatement of the Law Agency; Vol. 2, p. 1070, sec. 454; J. C. McCray & Son v. Pfost, 94 S. W. 998, 118 Mo. App. 672; Burwell v. Lantz, 240 S. W. 471, 210 Mo. App. 51; Jenkins v. Kay (Mo. App.), 224 S. W. 1028.]

It has been many times held that while a seller would have the *power* to revoke the contract, that it would not have the *right* to do so and the broker would still be entitled to his commission if he had been the procuring cause of the sale.

Under the facts in this case, the appellants were not required to show that J. H. Hart was ready, willing and able to perform the contract of purchase for the reason that respondents accepted his offer to purchase and later actually made the sale to him. [Harvey v. Francisco, *supra*; Knisely v. Leathe, 256 Mo. 341, 166 S. W. 257, 1. c. 266; Wright & Orrison v. Brown, *supra*; Glassman v. Fainberg, *supra*; Isaac T. Cook Co. v. Craddock-Terry Co., *supra*.]

We have carefully reviewed this record and have come to the conclusion that the judgment of the trial court was erroneous and that under the undisputed facts, it should have been for the appellants. Having arrived at this conclusion, we have the right to reverse and remand the cause for another trial or to give such judgment as we believe the trial court should have given in the first instance. It is our duty, if possible, to dispose of the case upon appeal, (Sec. 140 Civil Code of Mo. P. 395, Laws of Mo. 1943) so that litigation may not be unreasonably prolonged.

We see no reason why this case should be retried. One of the appellants, the purchaser, J. H. Hart, the respondents and their agent, Spirral Thompson, have testified and their respective contentions have been fully presented. A new trial would be merely a repetition. This cause is therefore reversed, and the trial court directed to enter judgment for appellants in the sum of $522.50, which is 5% of the $10,450.00 for which the farm was finally sold to the purchaser procured by appellants, and that respondents pay the cost of the proceedings. *Fulbright, P. J.,* and *Blair, J.,* concur.