[39] I concur in the result reached by BLAIR, J., in this case but wish to express some additional reasons for arriving at that conclusion.
[40] This case was submitted on an agreed statement of facts, which is brief. The defendants, in writing, entered into an exclusive contract of agency (Exhibit A) with plaintiffs, duly licensed real estate brokers, for a period of one year from September 7, 1945. Defendants agreed to pay the plaintiffs a ten percent commission if plaintiffs sold their property (a hotel) and a five percent commission if anyone else sold it "during the term of this agreement." The plaintiffs were granted "the sole and exclusive right" to procure a purchaser for the property within a period of one year and the contract should continue thereafter until thirty days notice in writing "shall have been received by you (plaintiffs) at the above address." (Gainesville, Mo.) The contract contained this provision, "I acknowledge that the listing of this property and your endeavor to procure a purchaser for same shall constitute a good and sufficient consideration for this agreement; * * *."
[41] After the execution of this contract, plaintiffs "spent considerable time and money in attempting to sell said property and in showing said property to prospective buyers and that the agent of plaintiffs was on a deal and attempting to sell said property to a person residing in the State of Oklahoma at the time said property was sold by defendants." Sometime after this contract was entered into and after the above mentioned expenditures, the defendants notified "the agents of the plaintiffs to take the hotel described in Exhibit `A' from their lists." Thereafter on March 11, 1946, and within one year from the date of the execution of the contract, the defendants sold the property "through their own efforts and without the assistance of plaintiffs" for $22,000. Plaintiffs sued on the contract for the five percent commission amounting to $1,100.00. The defendants, in their answer, admitted the execution of the contract, that plaintiffs were licensed real estate brokers, the contractual provisions relative to the ten percent and five percent commissions, but assert that the contract was without consideration and was revoked by defendants prior to their sale of the property. Defendants' theory at the trial and in their brief here, was and is that the defendants orally revoked the agency of plaintiff and that consequently they are not liable on the contract.
[42] This contract, it appears to me, has two separate and distinct parts. One part relating to the act of plaintiffs selling the *Page 19 
property, for which they would get ten percent, the other part being that if the defendants sold the property, the plaintiffs' commission would be five percent. Plaintiffs' acts in advertising the property, calling it to the attention of prospective buyers and expending money in trying to sell it would have the effect of interesting would-be purchasers, who might go direct to the plaintiff or they might go to the defendant owners. This would have been a benefit to the defendants if plaintiffs had never been given authority to sell the property.
[43] It has been often said, and it appears to be the law, that a principal had the power to revoke the authority of his agent to speak for, represent him and act in his stead but that he does not always have the right to do so. The reason given for this rule is that the principal confers the authority which is to be executed for his benefit and the agent cannot well insist on acting where confidence has been withdrawn and aid no longer desired. If the principal exercises this power without theright, he is liable to the agent for the amount of his commission, if the agent has procured a purchaser who is able, ready and willing to pay the price. Or, if the agent so elects, he may consider the contract rescinded and sue in quantum meruit for the reasonable value of his services in trying to sell.
[44] But, does it follow as a matter of law under a contract like this one that the revocation of the agent's authority to act for his principal in actually selling the property also revokes that portion of the contract which provides for the five percent commission and which is not at all dependent upon the agent procuring a purchaser? There can be no doubt but what the plaintiffs, had they elected to do so, could have sued for damages for breach of the contract and recovered the value of their services in trying to sell the property before the attempted revocation. But the fact that they could have done that does not prevent them from suing on the separable portion of the contract which was independent of the agent's authority to sell.
[45] In Burwell v. Lantz, 210 Mo.App. 51, 240 S.W. 471, loc.cit. 472, the Kansas City Court of Appeals held the general rule to be that the principal had the power to revoke the authority of his agent at any time and for any reason but said: "There are, however, exceptions to this rule; one is where the power is coupled with an interest and the other where the authority is given for a specified time for a valuable consideration." The court then held that the broker's authority to sell the property on commission was not a power coupled with an interest.
[46] This case further held that there was no consideration to support that portion of the contract fixing the time within which the agency could not be revoked by the principal. I think the acceptance of the contract in this case by the plaintiffs, the expenditures of money, time and effort in trying to procure a purchaser constituted a sufficient consideration for the giving of an exclusive contract. Jones v. Hollander, 130 A. 451, 3 N.J.Misc. 973; Gunning v. Muller et ux., 118 Wash. 685, 204 P. 779; Greene v. Minn. Billiard Co., 170 Wis. 597, 176 N.W. 239; Bell v. Dimmerling, 149 Ohio St. 165, 78 N.E.2d 49.
[47] It has been held that facts as in this case, create an agency coupled with an interest. J. C. McGray Son v. Pfost, 118 Mo.App. 672, 94 S.W. 998; Axson v. Thompson, 239 Mo.App. 732,197 S.W.2d 326, loc.cit. 331.
[48] I think this case is in conflict with the following cases: Burwell v. Lantz, supra; Pepper v. West Plains Telephone Co., 224 Mo.App. 1055, 34 S.W.2d 540.
[49] But it is in accord with the following cases of the St. Louis Court of Appeals: George J. Wanstrath Real Estate Co. v. Wenz et al., 185 Mo.App. 162, 170 S.W. 345; Mercantile Trust Co. v. Lamar, 148 Mo.App. 353, 128 S.W. 20; J. C. McCray Son v. Pfost, supra; Mercantile Trust Co. v. Johnson, 177 Mo.App. 503, 160 S.W. 535, and Glover v. Henderson, 120 Mo. 367, 25 S.W. 175, 41 Am.St.Rep. 695; Beebe v. Columbia Axle Co., 233 Mo.App. 212,117 S.W.2d 624.
[50] This conflict should be settled and I am in favor of overruling the motion for rehearing, but sustaining the motion to transfer the cause to the Supreme Court for that reason. *Page 20