Harold J. McINTYRE, d/b/a H. J. McIntyre Realty Company, (Plaintiff) Appellant,

v.

Russell E. EMMENEGGER, Donald R. Emmenegger, and Shirley H. Emmenegger, (Defendants) Respondents.

No. 30909.

St. Louis Court of Appeals.

Missouri.

March 20, 1962.

Joseph L. Simpson and Schurr & Inman, Clayton, for appellant.

Detjen & Nangle and John F. Nangle, Clayton, for respondents.

WOLFE, Judge.

This is an action by a real estate broker for $5,000 which he claims as commission for procuring a purchaser for a tract of land owned by the defendants. A jury having been waived the case was tried to the court. The trial resulted in a finding and judgment in favor of the defendants. The plaintiff prosecutes this appeal.

The facts of the case appear to be undisputed in most respects. The defendants are Russell E. and Donald R. Emmenegger, who are brothers, and Shirley H. Emmenegger, who is Donald's wife. They owned a tract of land which they were developing as a subdivision and building houses thereon. There was a deed of trust against the land to secure a loan of $110,000 owing to the Doerflinger Realty Company.

The plaintiff was a real estate broker. In November of 1956, Russell Emmenegger told him that they, the defendants, wanted to get out of the building business. They were at that time engaged in a public swimming pool project and needed cash for this purpose. They told him that they desired to sell the tract of land that they had been developing in order to get their money out of it. They informed McIntyre, the plaintiff, that they would pay him a

commission of $5,000 if he could find a buyer who would pay $178,500 for the property.

McIntyre set about to find a buyer. In the following month he talked about it to a man named Roth, who was in the used car business. Roth said that he was interested in getting into the building and subdivision development business. He later called McIntyre and said that he would like to look at the property.

McIntyre took Roth and a builder named Wallace, who was Roth's friend, to see the real estate. While there Wallace asked who owned it, and McIntyre told him that it belonged to the Emmeneggers. After showing the tract to Roth and Wallace, McIntyre telephoned the Emmeneggers and told them that he had done so. At the time he phoned Wallace was then talking to Russell Emmenegger about the property, and he said that Roth might be interested in it. Russell Emmenegger told McIntyre in this telephone conversation that he would protect McIntyre's interest in selling it.

There were several conferences after this between McIntyre and Roth, which culminated in Roth and his wife and the Emmeneggers entering into an option agreement. This agreement gave Roth and his wife an option to buy the property for $178,500, subject to a satisfactory extension of the deed of trust securing the loan of $110,000 owing the Doerflinger Realty Company. The cash to be paid the Emmeneggers was $68,500. There were several other contingencies mentioned in the option contract. The Roths put up $1,000 to be applied as earnest money in the event the sale was consummated.

The plaintiff testified that pending an attempt to iron out some of the contingencies upon which the sale depended, Roth called and asked him if the Emmeneggers would be interested in a partnership whereby Roth would put up the money and they would do the building. McIntyre relayed the inquiry to Russell Emmenegger and he said that they would not be interested but,

according to the plaintiff, he later said that they might consider it if the sale did not go through. Russell Emmenegger testified that he recalled no conversation with McIntyre about a partnership and that they did not want it. He said that the only thing that he talked to McIntyre about was the selling of the property for $178,500.

The Doerflinger Realty Company deed of trust carried with it an agreement that the Doerflinger Realty Company had an exclusive right to sell houses constructed on the property. This was not satisfactory to Roth, and Doerflinger refused to waive the right. There were other contingencies provided in the option agreement that could not be met, so Roth decided not to exercise the option to buy and his $1,000 was returned to him by McIntyre. The plaintiff then tried soliciting others whom he thought might be interested, but after several weeks of this without success his activities ended. The Emmeneggers heard nothing more from McIntyre after this.

Roth had gone to Florida shortly after the contract for an option was terminated, and he was gone for about three months. During this time neither McIntyre nor the Emmeneggers had any communication with him. When Roth returned he brought back an automobile which he thought that Donald Emmenegger would be interested in buying. Roth drove the car to the Emmeneggers' office and did sell the car to Donald. While they were all in the office he asked if they had disposed of the real estate, and they all drove out to look at it.

They discussed the development of the subdivision and agreed with Roth to form a corporation for that purpose. This agreement was consummated by organizing the Emmenegger-Roth Development Corporation. By the contract entered into between Roth and the Emmeneggers it was agreed that Emmenegger would sell the land to the corporation for $48,515.14, and that Roth would put into the corporation $48,500 in cash. The corporation assumed the debts against the tract, including the

$110,000 deed of trust. Out of the $48,-515.14 which the corporation was to pay the Emmeneggers for the land, they agreed to leave $4,800 in the corporation for the purchase of corporate stock, and the Emmeneggers also agreed to lend to the corporation $15,200. They actually received in cash from the transaction the sum of $28,500 and they agreed to devote their full time to the development of the subdivision.

When McIntyre heard that the property had been sold to the Emmenegger-Roth Development Corporation, he made demand for $5,000 commission from the Emmeneggers but they declined to pay it, and this suit followed.

The trial court found that both parties had considered the agency contract at an end for some time before the sale to the Emmenegger-Roth Development Corporation, and further found that McIntyre was not the procuring cause of the sale.

The plaintiff here contends that the court erred in holding for the defendants for the reason that the plaintiff did interest Roth in the purchase of the property, and that by reason of this, he, the agent, was the procuring cause of the subsequent sale to the corporation which Roth and the Emmeneggers organized. As to the sale price to the corporation he asserts that the gross sales price was $179,537.51. He arrives at this figure by taking into consideration the amount of certain obligations that the corporation agreed to assume plus the sum of $48,500 cash put into the venture by the Roths. We are cited to Taussig, Day & Co. v. Poleman, 360 Mo. 470, 228 S.W.2d 722; Axsom v. Thompson, 239 Mo. App. 732, 197 S.W.2d 326; McMonigal v. North Kansas City Development Co., 233 Mo.App. 1040, 129 S.W.2d 75; Allen v. Meredith, Mo.App., 32 S.W.2d 103.

These cases state the general proposition that if property placed in the hands of a broker, for sale at a certain price or upon certain terms, is sold through the broker as a procuring cause, he is entitled to a commission on the sale even though the negotiations are conducted through the owner who, in order to make a sale, accepts a price less than that stipulated or upon different terms than those the broker was authorized to accept.

In the case of Axsom v. Thompson, supra, the seller attempted to defraud the agent by selling a farm through a straw party to a prospective buyer produced by the agent, and to thus avoid the payment of the agent's commission. We should state here that there was never any issue in this case that the seller acted in bad faith. It was admitted that there was no such contention and none was pleaded.

We stated in Rogers v. McCune, Mo. App., 283 S.W.2d 872:

" * * * where a special contract exists, as where the agent agrees to sell for a net price to his principal, the agent cannot, in the absence of bad faith on the part of the seller, or a waiver of the right to insist upon the strict terms of the agreement, recover any commission unless he sells for an amount in excess of the price authorized."

It was understood by the plaintiff, and he so testified, that the defendants wanted to be rid of the property and to get out of it $63,000 net to them. The sale that they ultimately consummated with the corporation certainly did not accomplish this. The only cash that they received was $28,-500, and to get this they were obliged to agree to continue the supervision of the development. In view of this it cannot be said that the property sold for the same price or for more than that which they authorized McIntyre to sell it for. It must be held that this was not within the special contract that the Emmeneggers had with McIntyre.

There is also no question about the fact that McIntyre had discontinued all ef-

**354**

fort to induce Roth to buy, and in fact he had discontinued all effort to sell the property at the time the owner sold it to the corporation. The Supreme Court said, in Taylor v. Vestal, Mo., 304 S.W.2d 820, 1. c. 823:

"If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed."

Both Roth and his wife, the Emmeneggers, and McIntyre had given up any idea of the Roths purchasing the real estate long before it was sold to the Emmenegger-Roth Corporation.

The court properly held that McIntyre was not the procuring and inducing cause of the sale. In Rogers v. McCune, supra, we stated:

"For an agent to recover a commission upon the sale of property of his principal it is not sufficient that his act is one of a chain of causes producing the contract—it must be the procuring and inducing cause. The terms 'procuring cause' and 'inducing cause' refer to the cause which originates a series of events which without break of continuity result in the accomplishment of the object of the employment of the agent."

Considering all of the evidence, it is clear that if any one person could be deemed the procuring cause of the ulti-

mate sale to the corporation, it was Roth. He did not desire to buy the property himself, and he did not buy it, but he was instrumental in creating the corporation which bought it, and this was a transaction entirely new and wholly beyond the Emmeneggers' contract with McIntyre. Neither was there any "series of events * * * without break" from the time of Roth's first interest in buying to the time of the sale to the corporation.

The judgment of the Circuit Court is affirmed.

RUDDY, Acting P. J., and SAM C. BLAIR, Special Judge, concur.

ANDERSON, J., not participating.