**UNITED FARM AGENCY, INC., Appellant,**

v.

**Edwin J. MURPHY and Lucy B. Murphy, Respondent.**

**No. 40760.**

Missouri Court of Appeals, Eastern District, Division Four.

March 11, 1980.

Kurt D. Breeze, Festus, for appellant.

Gary Wagner, David L. Colson, James Freer, Farmington, for respondent.

SMITH, Presiding Justice.

Plaintiff appeals from a judgment entered pursuant to a jury verdict against plaintiff on its claim and in favor of defendant on her counterclaim in the amount of $333 actual damages and $7892.50 punitive damages.

Plaintiff is a licensed real estate broker. On February 1, 1974, defendant and her now deceased husband entered into a listing agreement with plaintiff. That contract employed plaintiff as a broker to procure a purchaser for the Murphy farm. The farm included a barn, corn crib and grain shed but no residence. Defendant and her husband promised to pay a commission of 10% of the selling price "when a purchaser is procured through you . . . at any other price and terms agreeable to me." The listing agreement also provided that if earnest money funds were forfeited: "one-third of so forfeited . . . funds are to be retained by me [property owners], the balance shall be paid to you [broker] as commission." The Yazdis were procured as purchasers by plaintiff. On May 18, 1974, a "Deposit Receipt and Agreement of Sale" was entered into between the Murphys and Dr. & Mrs. Yazdi for the purchase by the Yazdis of the listed farm. The sale contract provided for an earnest money payment of $1000 which was received and held by plaintiff. This payment was not referred to as a deposit and there is no express provision of the sale contract specifying its disposition in the event of default by either party. The total purchase price was $91,300 based upon a total acreage of 166 acres, and was subject to adjustment of $550 per acre if a survey revealed a greater or lesser acreage. The survey established a total acreage of 146 acres and a purchase price of $80,300. Following the survey, but before closing and transfer of title, the barn burned and was completely destroyed. The cause of the fire is unknown. The contract of sale provided: "The risk of loss or damage by fire or act of God prior to consummation of this contract is hereby assumed by seller."

After the fire, negotiations began between the Yazdis and the Murphys to arrive at an adjustment for the value of the barn. These resulted in no agreement. The Murphys offered a $3000 adjustment, the Yazdis demanded $5000, and the Murphys rejected plaintiff's offer to pay the $2000 difference from its commission. The sale was never consummated. Apparently some mutual agreement was reached between the Murphys and the Yazdis that neither would seek legal recourse. The precise nature or terms of this oral agreement was not developed, nor can we determine whether the agreement was a settlement, compromise, mutual rescission or mutual withdrawal. Thereafter plaintiff returned the earnest money deposit to the Yazdis without the express authorization of the Murphys.

Plaintiff commenced suit against defendant to recover the commission provided for in the listing contract. Defendant answered and filed a two count counterclaim. The answer as finally amended raised as an affirmative defense the breach by plaintiff of its fiduciary duty to defendant and thereby plaintiff's forfeiture of its right to a commission. The first count of the counterclaim was dismissed by the court at defendant's request in an earlier trial (which resulted in a mistrial) and was never refiled. It was not therefore extant at the time of the second trial. The second count of the counterclaim and the amended answer alleged in the most conclusory language possible that plaintiff had engaged in improper conduct. No allegation of fact is contained in either the answer or counterclaim that plaintiff's breach of fiduciary duty consisted of returning the earnest money deposit to the Yazdis without the consent or knowledge of defendant. That was, however, the issue tried and submitted to the jury on both the plaintiff's claim and defendant's counterclaim.

On appeal plaintiff does not premise as error that the court failed to direct a verdict in its favor on either claim, probably because no request for such directed verdict was made by it during the trial. Rather its "points-relied-on" are all premised upon error in giving instructions. In the argument portion of the brief, suggestion is made that we reverse with directions to enter a judgment for plaintiff on its claim and against defendant on her counterclaim. We have before us only the challenges to the instructions and we reach only those challenges.

Plaintiff submitted MAI 29.01 modified as its verdict director.[1] Defendant submitted a converse and an affirmative defense instruction. The latter instructed the jury to find for defendant if it believed "Plaintiff returned the earnest money to the Yazdis without the knowledge or consent of the defendant." Defendant's verdict-directing instruction on her counterclaim required the jury to believe exactly the same proposition and that defendant was damaged thereby. Plaintiff attacks both submissions. The attack on the first submission—the affirmative defense—is that the evidence did not establish a forfeiture by the Yazdis entitling defendant to the deposit and that the instruction improperly omits a finding of harm or prejudice to defendant. The second submission—on defendant's counterclaim—is claimed erroneous because there was no evidence to establish actual damages because no forfeiture had been declared by defendant against the Yazdis entitling her to any portion of the earnest money deposit. Obviously, we must first determine the legal duty owing to defendant by plaintiff.

Our inquiry must start with *Politte v. Wall*, 256 S.W.2d 283 (Mo.App.1953). Factually the case is quite similar to that before us. It is distinguishable in two important particulars. First, there was an imperfection in title making it impossible for the seller to complete the sale although the imperfection could be corrected, and secondly the seller was actively attempting to perfect the title at the time the broker

---

1. The modification changed the language of paragraph 3 from a reference to a purchaser "ready, able and willing to purchase" to a reference to purchasers "who executed a contract for the purchase of defendant's farm." This was a correct statement of law and a proper modification of MAI 29.01. *Kelly v. Craigmiles*, 460 S.W.2d 577 (Mo.1970).

returned the earnest money deposit to the purchaser. In our case neither situation exists—the barn had been destroyed and the seller was making no further effort to arrive at an adjustment for the loss with the purchaser. *Politte* sets forth fully the duty of the broker to his principal. Specifically that duty requires that the broker inform his principal of all facts pertinent to the transaction. In this regard the court stated:

> "In returning the deposit to the purchaser without the knowledge or consent of the sellers, the broker exceeded his authority. He was employed to sell real estate. It was a limited agency. He had no implied or apparent authority to rescind or abandon a sale. He could not bind his principals beyond the limit of the authority conferred upon him. . . . [Citation omitted].
>
> "In so doing, the broker violated his duty under the earnest money contract which obligated him to keep the deposit as part payment of the purchase price, and either pay it over to the seller upon completion of the deal or declaration of a forfeiture, or pay it over to the purchaser only, if and when it was determined by competent authority that an imperfect title could not be perfected within a reasonable length of time. Because of this breach plaintiff cannot recover his commission." [5, 6]

Thus, *Politte* holds that there exists a fiduciary obligation or duty to act only with the knowledge and consent of the principal and breach of that duty serves to invoke the penalty of forfeiture of the commission earned. But *Politte* also contains dicta which creates difficulties. It is stated:

> "Had there been a complete and incurable failure of title a totally different situation would have presented itself, for in that event the right of the purchaser to take down his deposit would have been absolute and it would have been the *duty* of the broker to return it." [6] (Emphasis supplied).

If both quoted sections are correct, then a single, mutually exclusive duty to both purchaser and seller is imposed upon the broker, and his breach of duty is determined by whether he correctly decides which party is legally entitled to the earnest money. In *Politte* he breached that duty because he failed to correctly determine that one year was a reasonable time to cure an imperfection in title. The rationale of *Politte* appears to have been accepted in *Herb Tillman Co. v. Sissel*, 348 S.W.2d 819 (Mo.App. 1961) [4–9] and *Waltermire v. Stuart*, 222 S.W.2d 945 (Mo.App.1949) [6]. It is also apparently widely accepted in other jurisdictions. Annot. Broker's return of deposit to purchaser as waiver of right to demand commission from seller, 69 A.L.R.2d 1244 (1960). We can see only two theories upon which to justify the creation of such an anomalous duty, the very existence of which depends upon whether the broker makes a correct decision of the legal rights of two parties to a contract.

One is that the payment of the earnest money back to the purchaser is proper because the principal-seller has sustained no damage from the repayment. But that analysis does not deal with duty, but with damage.

The second is that the agent is not in fact the agent for the seller but has become instead a stakeholder or escrow agent for the seller and buyer. Such a theory finds some support in *Martin v. Allen*, 125 Mo. App. 636, 103 S.W. 138 (1907). But there it was held that the contract whereby the broker received the money clearly provided that he received the money as a stakeholder. The contract of sale here does not so provide expressly or by implication. It does not mention the broker, is not signed by the broker, and contains no provision dealing with the disposition of the earnest money in the event of default by either seller or buyer.

It seems more reasonable that the dicta in *Politte* be disregarded and the usual rules of agency, which form the basis for the holding in that case, be applied. As the agent for the defendant-seller, plaintiff owed its principal duties which included making the principal aware of any demand

for return of the earnest money and obtaining consent from the principal before returning such money. The agency contract specifically provided that earnest money belonged to the principal—"are to be *retained* by me."

1 F. Mechem, The Law of Agency, § 1438 (2d ed. 1914) deals with the situation before us, where money to apply to the purchase price of land has been paid ·to the agent authorized to receive it and the buyer subsequently rescinds the contract and seeks recovery against the agent for the earnest money. It is stated:

> "At the time of the payment, by the hypothesis, the money belonged to the principal and the payment was rightfully made. Payment to the agent, under these circumstances, was payment to the principal, and the agent is responsible. to the principal for it. The agent had made no contract with the person paying, and was guilty of no breach of duty toward him. Even though the agent may have the money still in his possession, he holds it for his principal, and the action should be against the principal, especially where there may be controversy respecting the existence of such a change in circumstances as will justify the party paying in demanding back his money. That is a question which should be litigated with the principal and not with the agent."

This approach, which commends itself to reason and logic places upon the agent a duty only to his disclosed principal.[2]

**2.** There are also some courts which have drawn a distinction between the situation where at the time the payment is made to the agent circumstances exist that would entitle the buyer to rescind (imperfect title) and those where the grounds for rescission occur after the payment is made (destruction of the property). In the former case liability for repayment may be sought against the agent if he has not turned over the money to his principal, in the latter case it may not. *Gust v. Wilson,* 79 N.D. 865, 60 N.W.2d 202 (1953) [8–10]. Again this approach creates the duty on the basis of the agent's correctness in determining the legal rights of the seller and buyer. In *Politte* the imperfection existed at the time the earnest money was paid but was correctible thereafter.

The foregoing analysis leads us to conclude that the duty of the agent to notify the principal and obtain her consent before returning the money to the purchaser should not be dependent upon the legal rights of the purchaser and seller vis-a-vis each other. Plaintiff admittedly breached its duty to its principal by returning the money without the actual consent of the defendant. But that determination does not end the inquiry. What then is the effect of that breach upon the plaintiff's claim for commission and the defendant's counterclaim for damages?

■ We deal first with plaintiff's claim for commission. *Politte* apparently makes the breach of the agent's duty an absolute bar to recovery of the commission. But again the dicta must be noticed for it states that a different result would obtain if the purchaser had an absolute right to rescind. *Herb Tillman Co. v. Sissel,* 348 S.W.2d 819 (Mo.App.1961) [8] expresses the rule in less absolute terms.

> "It is the rule that an agent who returns the earnest money *when such return may hinder or prejudice any interest of his principal in respect to the transaction* loses his right to commission." (Emphasis supplied)

■ There is logic to this approach. The broker has fully earned the commission when the purchaser and seller execute the sale contract. *Kelly v. Craiqmiles, supra; Axsom v. Thompson,* 239 Mo.App. 732, 197 S.W.2d 326 (1946); *Chamberlain v. Amick,* 210 S.W.2d 528 (Mo.App.1948). Action

Into which category would it fit? In the case at bar it is clear that the circumstance authorizing recission occurred after the payment of the earnest money. We do not find this line of cases persuasive or applicable here. Nor do we find *Winningham v. Faucher,* 52 Mo.App. 458 (1893) applicable. There it was held that the agent was liable to the rescinding purchaser for the earnest money where the seller had *repudiated the agency and clearly refused to perform the contract.* While it is possible to view this case as the precursor of the dicta of *Politte,* it is apparent that in *Winningham, supra,* the seller had disaffirmed the agency of the broker, the existence of the sale contract and in so doing had consented to the return of the earnest money.

which he takes thereafter which improperly hinders or prejudices his principal is contrary to the best interests of his principal to whom he owes a fiduciary duty. Such conduct forfeits or relinquishes or waives his right to receive the commission he has earned. *Herb Tillman Co. v. Sissel, supra,* [8]. Forfeitures are not favored and conduct which is contrary to the agent's duty but is not inherently disloyal or in the nature of self-dealing and which does not harm the principal does not necessarily call for the serious punishment of forfeiture. In *Klein v. Terminal R. Assn.,* 268 S.W. 660 (Mo.App.1925) failure of the broker to reveal the name of the purchaser was not held sufficient to warrant forfeiture of the commission, where no harm or prejudice occurred to the principal from such non-disclosure. Conversely, in *King v. Pruitt,* 365 Mo. 823, 288 S.W.2d 923 (Mo. banc 1956) such non-disclosure was held sufficient to trigger forfeiture because the non-disclosure was of a material fact which might have influenced the principal's action. The decision in *King, supra,* reversed the Court of Appeals which had declined to invoke forfeiture because of its finding of an absence of harm or prejudice to the principal. *King v. Pruitt,* 280 S.W.2d 872 (Mo.App. 1955).

The affirmative defense of forfeiture required findings that plaintiff breached its duty and defendant was hindered or prejudiced by that breach. The affirmative defense verdict-directing instruction on plaintiff's claim required a verdict for defendant if the jury found only that plaintiff returned the earnest money without the knowledge or consent of defendant—a submission of breach only. Under the facts of this case there was a substantial question whether the loss of the barn was such a material part of the estate conveyed as to entitle the purchaser to rescind because of the fire. *Skelly Oil Company v. Ashmore,* 365 S.W.2d 582 (Mo. banc 1963). There was also evidence that the contract was mutually rescinded or was mutually abandoned. If the purchaser was entitled to rescission or if the parties mutually abandoned the contract and attempted to return to the status quo existing before the contract was executed, the Yazdis were entitled to return of their earnest money from defendant. This presented a factual question of whether plaintiff's action hindered or prejudiced the defendant, and that element should have been submitted to the jury in the affirmative defense instruction.

The same rationale is also present with regard to the verdict-directing instruction of defendant on the counterclaim. That counterclaim was based upon breach of contract or tort (it is difficult to tell which under the pleading). In either event an essential element of that claim is that defendant suffered damage from plaintiff's conduct. The only damage claimed by defendant is the loss of her share of the earnest money. Whether such damage existed depended upon a resolution of the respective rights of defendant and the Yazdis to the earnest money. The burden was upon defendant to prove that she was entitled to that money and had thereby suffered damage from plaintiff's conduct. This she did not do. There was no evidence from which such a determination could be made and the instruction was not supported by the evidence in this regard.

Judgment reversed and cause remanded for new trial on plaintiff's claim and defendant's counterclaim.

SATZ, J., and ALDEN A. STOCKARD, Special Judge, concurs.