CHARLES A. TULL, Respondent, v. NATHANIEL H. STARMER, Appellant.

Kansas City Court of Appeals, May 3, 1915.

1. **REAL ESTATE BROKERS: Procurement of Purchaser: Right to Commission.** Where a landowner authorizes a real estate broker to procure a purchaser for his land, and no time is specified in which the service is to be performed, the broker has a reasonable time in which to perform. And if within that time the broker obtains a purchaser who is ready, willing and able to purchase and presents him to the owner, the broker has earned his commission even though the owner refuses to sell.

2. ———: ———: ———: **Time of Performance: Jury Question.** Where no time is specified in which the broker is to perform, he is to have a reasonable time. Where the contract is oral and there is a dispute as to whether the time was specified, the question is one for the jury. And if no time was specified and the agent had, therefore, a reasonable time, the question what is a reasonable time is to be determined by the jury in the light of all the circumstances.

3. ———: ———: ———: **Effect of Adding Improvements by the Owner.** If, during the life of the contract, the owner adds improvements to the farm so that he cannot afford to sell on the terms agreed upon, this will not absolve him from the duty to pay a commission upon performance of the contract by the agent within the time. To absolve himself from such liability the owner must terminate the agency or withdraw the land from market or notify the agent that the land is no longer on the market at the terms agreed upon, and he must do so before the agent has performed.

Appeal from Buchanan Circuit Court.—*Hon. Wm. H. Haynes,* Judge.

Affirmed.

*L. C. Gabbert* and *W. H. Utz* for appellant.

*Kendall B. Randolph* for respondent.

TRIMBLE, J.—Herein is another of those oft-recurring controversies between a real estate broker and his principal over the payment of a commission.

Respondent claimed that appellant engaged his services as a real estate broker to procure a purchaser for his farm at $125 per acre, and agreed to pay therefor the regular commission; that he procured two men who were ready, able, and willing to buy the farm at that price and brought them and the owner together, but that just as they were on the point of going to a lawyer to draw up the contract the owner refused to sell; wherefore, having performed his side of the contract, he says he should receive his pay.

Appellant admits that he placed his land with respondent to sell at $125 per acre and that he agreed to pay the regular commission, but he says that the authority to sell was "only for a few days" instead of without limit as to time as claimed by the broker; and that the broker did not secure a purchaser within a reasonable time; that the purchasers were not presented to him until after he had made certain improvements on the farm subsequent to his agreement with respondent to sell at $125 per acre, and that consequently he could not afford to sell at that figure, and therefore refused to do so. He admits that he never told respondent he was putting improvements on the farm nor that the price thereof was raised until the moment he refused to sign a contract, and this was after the purchasers had been obtained and the broker's work had been completed.

The dispute between the parties as to the time the broker had in which to perform his contract gave rise to a question of fact which it was the jury's province to settle.  It has done so by finding in respondent's favor.  We must therefore accept respondent's version that no time was specified in which he was to perform.

If no limit of time was placed on the agent's authority, then he had a reasonable time in which to procure a purchaser.  Ordinarily what is a reasonable time depends upon the facts in the case and is more frequently than otherwise a question for the jury to determine taking into consideration the acts of the parties in relation to the contract.  The property was placed in respondent's hands in July, 1912, and the purchasers were not finally procured until some time in the fall of 1913—fifteen months later, and appellant would have us say this lapse of time was unreasonable as a matter of law.  But the evidence amply tends to show that respondent was showing the farm to prospective buyers during the fall of 1912, and the spring and summer of 1913, and appellant knew respondent was bringing men to look at the farm and did nothing to change or affect the agent's authority.  During this time other real estate agents, who also had the farm listed, were showing the farm at $125.  This was undoubtedly as late at least as May, 1913.  Gray, one of the men whom respondent procured as a purchaser was taken to see the farm at least three separate times, once in the fall of 1912, once still later that year, and a third time in the spring of 1913.  He was wanting to buy all the time but not being situated where he could look after the farm personally, he wanted to buy it with some one who could help him in looking after it.  Finally about October, 1913, a man was found who with Gray looked at the farm, and who was willing to buy it with him.  They agreed to do so, and the two were shown to be ready, willing and able to purchase.  There is no evidence that appellant ever told

respondent he would have to have more than $125 per acre for it, and there is evidence that he did not tell him he had raised in price, or that it was no longer on the market at that figure.

Under these circumstances it was a question for the jury to say whether respondent performed his contract within a reasonable time or not, and we cannot pass upon it as a matter of law. Nor is there any merit in the point made that appellant was never told that the proposed purchasers were willing to give $125 per acre for the land. The evidence fully shows that this was done, and that appellant refused to proceed further because he wanted more money. Consequently, there is no doubt but that the court did right in overruling the demurrer. There is no evidence in the record to support the charge that these two purchasers were not procured in good faith or that their offer and readiness to buy were a mere sham to enable respondent to apparently comply with his contract and demand a commission.

There is no dispute over the amount of the commission to be paid, and both sides agree that it coincided with the usual and regular rate in such cases. If a commission was earned and was due from appellant, it amounted to $450 according to the conceded facts. Since there was no disagreement on this feature of the case, there was no error in plaintiff's instruction number 1 referring to the commission as "the amount it was understood between the parties, in the event a purchaser was procured, was to be paid as commissions." The instruction did not authorize or permit a recovery on a *quantum meruit,* but authorized the jury, if they found the required facts which were necessary to plaintiff's recovery, to find for him in the amount understood and agreed upon between them. This was not in dispute and coincided exactly with the allegation of the petition and the jury returned a verdict for that amount.

Plaintiff's instruction number 2 told the jury that unless a definite time was specified in the contract in which plaintiff was to sell the farm it made no difference if there was a considerable lapse of time so long as that lapse was not unreasonable. We fail to see wherein the jury could have been misled by this instruction. If the time was not limited, the agent had a reasonable time in which to sell and it was for the jury to say whether the lapse of time was so great as to be unreasonable. Defendant's instruction submitted to the jury the question of whether there was a limit of time prescribed by the contract and told them that, if such was the case and the agent did not sell within that time, he could not recover. So that the jury could not fail to understand that if the contract was that the agent was to have selling authority for "only a few days" he did not sell within that time and was therefore not entitled to recover. Every time the agent showed the farm to a prospective buyer with the owner's knowledge there was a recognition of the agency if the owner did nothing to show his revocation. [Kinder v. Pope, 106 Mo. App. 536.] If at these times the owner was unwilling to sell at $125 per acre it was clearly incumbent upon him to withdraw the land from market at that price and inform the agent of that fact. So far as respondent's evidence goes he knew nothing of any improvements being made upon the farm of such a nature and extent as to notify him the owner could not longer afford to sell at $125 per acre. And under the evidence there was room for the jury to have their own notions as to the extent of the improvements claimed to have been made by appellant, and they were not compelled to accept his statement in that regard.

The evidence in support of the respondent's case tends to show that he did all that was required of him by his contract within the time provided when he procured purchasers who were ready, able and willing to

buy upon the terms specified. [Hayden v. Grulo, 35 Mo. App. 647; Christensen v. Woolsy, 41 Mo. App. 53; Gelatt v. Ridge, 117 Mo. 553.] Under such circumstances the owner cannot defeat the right to commission by refusing to sell. [Mullaby v. Greenwood, 127 Mo. 138; Gwinnup v. Sibert, 106 Mo. App. 709; Finch v. Guardian Trust Co., 92 Mo. App. 263; Harwood v. Diemer, 41 Mo. App. 48.]

Appellant's liability depends wholly upon questions of fact presented by the evidence. The various inferences arising therefrom were for the jury to determine. We cannot draw them or decide the case upon them. If appellant has unfortunately become entangled in a contract with a real estate agent it is because of his carelessness in creating an obligation and in making no effort to absolve himself therefrom until after the agent has performed his part of the contract and the liability has become fixed. In such case where the issues of fact involved have been properly submitted to a jury of his peers and they have decided against him, there is no help for him in Israel.

The judgment is affirmed. All concur.