PETER C. BOPP, RESPONDENT, v. JETAMA INVESTMENT COMPANY, A CORPORATION, AND A. A. JEKEL (DEFENDANTS), JETAMA INVESTMENT COMPANY, A CORPORATION, APPELLANT.—96 S. W. (2d) 877.

St. Louis Court of Appeals.    Opinion filed October 6, 1936.

Opinion Modified; Motion for Rehearing Overruled October 20, 1936.

*George Eigel* and *John F. Gillespie* for appellant.

*C. L. Shotwell* for respondent.

HOSTETTER, P. J.—This suit was begun on the 5th day of March, 1934, in the Circuit Court of St. Louis County, by plaintiff, a real estate broker, against defendants, Jetama Investment Company, a corporation, and A. A. Jekel, its president. It is an action to recover a commission claimed by plaintiff on account of the sale of a piece of real estate belonging to defendant corporation, and located in Kirkwood, St. Louis County, Missouri. The amended petition, on which the case was tried, contained two counts, the first one being based on an express contract and the second one on *quantum meruit*.

A jury was waived and the case was tried by the court, which found in favor of both defendants on the first count, and in favor of A. A. Jekel on the second count, but against the corporate defendant on said second count in the sum of $750.

The corporate defendant being the sole appellant, we will allow A. A. Jekel and the first count in the petition to fade out of the picture.

The second count, in substance, is as follows:

That about March, 1933, defendants employed plaintiff to sell the said real estate and the latter agreed to undertake the job and advertised the same extensively at his own expense and showed it to prospective purchasers and made every effort to find a purchaser, and finally, during the month of July, 1933, did find a purchaser who was able and willing to purchase the property at a price acceptable to defendants, and that as a result of plaintiff's efforts to sell the property, said purchaser so procured by plaintiff did purchase, and defendant, Jetama Investment Company, did sell same to said purchaser for the price and sum of $15,000 about December 28, 1933; that plaintiff's said services were reasonably worth $750, for which amount judgment was prayed.

The answer was a general denial.

The testimony on behalf of plaintiff tended to support the allegations contained in said second count.

Plaintiff testified in his own behalf substantially as follows:

That Jekel, president of the defendant corporation, in March, 1933, requested him to procure a purchaser for the property; that thereafter he (plaintiff) advertised the property in various St. Louis newspapers and made efforts to sell it for the authorized amount of $18,000; that Mr. Tacke, representing the Pevely Dairy Company, called at plaintiff's office in Kirkwood and inquired about some property known as the Straub property; that he told Tacke the price at which it was being held and they both thought it was too high and that Tacke then inquired about other business property on Lindbergh and they both went to see it and Tacke didn't like the location of same; that Tacke then asked him if he had any property farther North and that he then showed him the property in controversy, which was known as the "Pitman property;" that Tacke seemed pleased with this Pitman tract saying: "That appeals to me," and inquired the price it was held at and that he told him $18,000; that Tacke told him that he was representing the Pevely Dairy Company, or Mr. Kerckhoff, its president, in buying land; that he himself was not in the real estate business then, but formerly had been; that on leaving Tacke said, in reference to the Pitman tract, "you will hear from me;" that after Tacke left he went to Mr. Jekel's house and told him that he had a prospective purchaser for the Pitman tract and it was the Pevely Dairy Company, and that Mr. Jekel said that he was very glad to hear about it; that about a week thereafter Tacke called him up over the phone and said that he was authorized by Mr. Kerckhoff (president of the Pevely Dairy Company) to offer $15,000 for the property and he (witness) responded that he feared the offer would be turned down, that it was a bargain at $18,000, and that Tacke said $15,000 was all he was authorized to offer; that he (witness) went at once to Jekel's house and told him what had transpired and advised him that if he were in his place he would not accept it and that Jekel said, "No, we won't accept that;" that later, Jekel came to his office and suggested that he make a proposition of $15,000 plus commission; that he then said, "Mr. Jekel, I believe you are in too big a hurry with making that proposition. I would wait a while to see what will transpire;" that sometime thereafter he (witness) called up Mr. Mattes, secretary and treasurer of the Jetama Investment Company, and told him that Mr. Jekel had spoken about making that offer and that he had advised him against it, and that Mattes replied, "No, don't do that, I will talk to Mr. Jekel about that;" that he then wrote a letter to Mr. Kerckhoff on the subject and received a reply under date of August 24, 1933, reading as follows:

"St. Louis
"August 24, 1933.

"Mr. P. C. Bopp,
"106 West Adams Avenue,
"Kirkwood, Missouri.
"Dear Mr. Bopp:

"In answer to your letter of the 21st concerning the location in Kirkwood, wish to advise that I shall look over this property at my first. opportunity and after seeing same, if I am interested in purchasing it through you will be glad to get in touch with you.

"Very truly yours,
"Pevely Dairy Company
"DCK:AS                                    By D. C. Kerckhoff."

Plaintiff then continued his testimony as follows: "I immediately took the letter and went to Mr. Jekel and showed it to him. Mr. Jekel said, "That looks good, doesn't it?" I said, "Mr. Jekel, it may look good to you, but it doesn't look so good to me. He says if he was interested in buying it through me that he would come out and view the place. Now, that looks on the face of it to me like he didn't want to purchase it through me, but wants to purchase it through somebody else." Mr. Jekel said, "Oh, they can't do that, they can't do that. I will see that you are taken care of on that." Mr. Jekel came to my office one day after that and said, "They are— there was a man to see me from the Pevely Dairy Company, and it seems they want to deal individually through us—through me" —me or us, I don't know which he said—"but," he said, "I told him that Bopp would have to be taken care of on that commission." I said, "That man is Mr. Tacke, isn't it?" And he said, "Yes, that is the man; that is the man, Mr. Tacke." Mr. Jekel did not say in particular what the commission was. Only one time he said, "Now, the commission on that is 5 per cent up to a certain amount, isn't it?" I said, "Yes. After a certain amount it is less." I said, "Yes." Mr. Jekel, when he came to my office, said, "They are offering—this man Tacke offers $15,000.00." That was along in September, I think. It was along in the fall of the year, some time before they purchased the place, and Mr. Jekel told me, he says, "Now, I told Mr. Tacke definitely that you are going to be taken care of on that commission," and he tapped me on the shoulder and said, "I will see that you are taken care of." I have never received any part of that commission. I did ask for it. I have been in the real estate business for about two years and I know what the usual fee for selling real estate is, the usual commission paid to agents. It is five per cent. In my opinion that is a fair and reasonable compensation. The Pitman property, that I mentioned awhile ago, is the property that the Jetama Investment Company sold, that

is part of block 36, Kirkwood. The Jetama Investment Company received $15,000.00 for this property.''

Mr. Jekel, in his testimony, denied that plaintiff ever showed him the letter of August 24, 1933,. from Mr. Kerckhoff, claiming that he knew nothing about such a letter, denied that he ever told plaintiff that he would be taken care of on his commissions, and denied that he had ever discussed with plaintiff the propriety of making an offer to sell the property at $15,000 plus commission, or ever authorized such an offer to be made. He admitted, however, that plaintiff told him that the Pevely Dairy Company was a prospective purchaser for the property before Tacke came to him, and admitted that he consummated the sale of the property to the Pevely Dairy Company on December 28, 1933, for $15,000 and paid Tacke $500 commission, the latter knocking off $250 in furtherance of putting the deal through.

Tacke also denied certain portions of plaintiff's testimony, but did admit that plaintiff had showed him the property in controversy and that he told plaintiff that he was' representing the Pevely Dairy Company, but only did so after plaintiff made inquiry as to whom he represented. He also admitted that he made the offer on behalf of the Pevely Dairy Company of $15,000 and plaintiff said the owners wanted $18,000. He further testified that he told plaintiff he wouldn't raise his offer and plaintiff told him that the owners wouldn't accept $15,000 and there followed about a two months' period in which nothing was done and he considered plaintiff was out of it, and then he investigated anew, and found out who was the owner and made the sale himself and received $500 from the Jetama Investment Company as commission. Tacke also testified that he asked plaintiff originally if he would split the commission with him and plaintiff said, ''Yes.'' Plaintiff denied this in his rebuttal testimony.

The court, after the conclusion of the testimony, refused an instruction in the nature of a demurrer to the evidence, and took the case under advisement, and, on the 18th day of February, 1935, made and filed a lengthy written finding of facts which was in accord with the facts as detailed by the plaintiff in his testimony. The court specifically found that plaintiff did not abandon the agency, nor was the same revoked or terminated by Jekel and, further, that plaintiff was the procuring cause of the negotiation between the Jetama Investment Company and the Pevely Dairy Company which resulted in the sale of the property to the Pevely Dairy Company and rendered the judgment for $750 and costs in favor of plaintiff and against the Jetama Investment Company, from which the latter, after an ineffective motion for a new trial, duly appealed and brings the cause to this court for review.

Viewing the testimony for plaintiff in its most favorable light, as we must do in ruling on the propriety of the court's action in refusing defendant's instruction in the nature of a demurrer to the evidence, we hold that the demurrer was properly ruled.

There was substantial, competent evidence to support the finding in favor of plaintiff. We may not disturb the verdict of the trial judge if it is supported by substantial, competent testimony. [Cunliff v. Hausman, 97 Mo. App. 467, 71 S. W. 368; Applegate v. Danciger (Mo. App.), 2 S. W. (2d) 635; Sidebotham v. Spengler, 154 Mo. App. 11, 133 S. W. 101.]

The trial judge is in a much better position to determine correctly the real facts, than are we as a reviewing court, and we attach much weight to his finding of facts, as he sees the witnesses, and can observe their demeanor and watch their countenances while testifying, and, where, as in the instant case, there are such marked contradictions between the testimony adduced by plaintiff and that adduced by defendant, he is better able to separate the wheat from the chaff, and the dross from the true metal and to garner from all the testimony the golden grains of truth which are decisive of the issues in the cause.

Some decisive facts are not in dispute. It is conceded by Mr. Jekel, president of the Jetama Investment Company, that plaintiff found and produced the Pevely Dairy Company as a prospective purchaser and submitted an offer of $15,000 for the property before he came in contact with Tacke, its regular purchasing agent, and that later, he, through negotiations with Tacke, the buyer's alleged *alter ego*, sold the property to plaintiff's customer, the Pevely Dairy Company, and paid *its agent* $500 commission.

Tacke was somewhat evasive in his testimony as to whether the Pevely Dairy Company paid him any compensation as their buying agent, saying that he "had never been on their payroll," although professing to have "represented them in nearly every piece of real estate they ever bought." He admitted, however, that plaintiff showed him the property and that it was through him that he first found out that the property was for sale. He, as agent for the buyer, seemed not averse to splitting commissions with the agent for the seller, and apparently could see no impropriety in his conduct in the *instant* case in accepting $500 as commission from the seller, while he was purchasing agent for the buyer, nor, in failing to divide his commissions with plaintiff, although he was instrumental in surreptitiously alienating plaintiff's client from the beaten path of business rectitude.

Courts do not look with favor on a real estate broker representing both buyer and seller. [Nahn-Heberer Realty Co. v. Schrader (Mo. App.), 89 S. W. (2d) 142, loc. cit. 144.] Ordinarily, an agent who

represents both buyer and seller without making full disclosure of his position to both will be denied recovery of commission by the courts from either.

We see no merit in the points urged by the appealing defendant. As to the proposition that when the owner lists his property at a certain price and the agent produces a purchaser at a lesser price, the owner may then sell to the purchaser so produced at such lesser price without incurring any liability to the agent, we think that it is unsound and not in harmony with the rulings of our courts.

In Henning v. Real Estate Co., 218 Mo. App. 433, loc. cit. 440, 277 S. W. 62, this court, in demonstrating the unsoundness of this proposition, said: "If this were not so, it would become any easy matter for the principal to escape the payment of the agent's commission, while enjoying the fruits of his labor."

In Tyler v. Parr, 52 Mo. 249, the court said:

"The law is well established that in a suit by a real estate agent for the amount of his commission it is immaterial that the owner sold the property and concluded the bargain. If, after the property is placed in the agent's hands, the sale is brought about or procured by his advertisement and exertions, he will be entitled to his commissions. Or, if the agent introduces the purchaser, or discloses his name to the seller, and through such introduction or disclosure negotiations are begun, and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner."

In Real Estate Co. v. Epstein, 157 Mo. App. 101, 137 S. W. 326, the court said:

"There is certainly evidence in the record tending to prove plaintiff was the procuring cause of the sale, for, in the present posture of the case, it is conceded Mathes was its customer, and that it both directed his attention to the property and the attention to him as a prospective buyer. That Mathes afterwards purchased the property directly from defendant for $11,600.00 is conceded, . . .

"It is wholly unimportant that defendant finally consummated the sale without the knowledge of plaintiff, if the jury believe plaintiff interested Mathes, the purchaser, in the property and directed the attention of defendant to him."

In Brennan v. Roach, 47 Mo. App. 292, the court said:

"After he (the agent) has shaken the tree, another agent is not to be permitted to run up and carry off the fruit; and if the owner allows this to be done, he is responsible to the first agent."

In Hovey & Brown v. Aaron, 133 Mo. App. 573, 113 S. W. 718, the court said:

"If defendant, while plaintiffs' authority to sell stood unrevoked, chose to sell the property, either in person or through another agent,

to a customer procured by the efforts of plaintiffs for a less price than that which plaintiffs were authorized to offer, that was his privilege, but he will not be permitted to reap the fruits of plaintiff's labor and then deny them their just reward."

It necessarily follows that the judgment of the trial court should be affirmed and it is so ordered. *Becker* and *McCullen, JJ.,* concur.