## ARTHUR L. KNIFFEN REAL ESTATE COMPANY, a Corporation, (Plaintiff) Appellant,

v.

## Joseph ACCARDI and Theresa Accardi, (Defendants) Respondents.

No. 30949.

St. Louis Court of Appeals.

Missouri.

Feb. 19, 1963.

Blumenfeld, Abrams & Daniel, James L. Zemelman, St. Louis, for appellant.

Ferrara & Mulligan, John F. Mulligan, St. Louis, for respondents.

J. P. MORGAN, Special Commissioner.

Plaintiff has appealed from the judgment entered on a jury verdict for defendants in plaintiff's action to recover a real estate commission for its alleged efforts in procuring a purchaser for a residence property owned by defendants.

The petition declared plaintiff to be a corporate realtor engaged in the general real estate business, and, "that on or about October 19, 1957, defendants entered into a contract in writing under which defend- ants agreed to sell to Emil E. Clark and Jane L. Clark, his wife, certain real property, together with improvements thereon, known as Lot 75 Grandview Hills, St. Louis County, Missouri, being certain residential property, for the sum of $26,800.00" and incorporated this sales agreement as Exhibit "A."

It was also alleged, "that said agreement further provided that the sellers, defendants herein, would pay a commission on said sale in the amount of five (5%) per cent of the sales price" or $1340.00. After stating, "that plaintiff acted in said transaction as the real estate agent, and performed all services required of it which resulted in the closing of said sale" claimed plaintiff was entitled to the commission. The exhibited contract had one line reference payment of a commission and read, "Commission shall be $ 5%    to be paid by seller and to be a lien on the property."

The dispute as to whether defendants owed plaintiff a commission continued until purchasers demanded the sale be closed. With all parties represented by counsel, the property was transferred to Clarks and the five per cent commission claimed by plaintiff was placed in escrow subject to the outcome of this litigation.

Plaintiff-Appellant in its brief prefaces its argument by stating, "The sole ground upon which this appeal is based is the error committed by the court in the giving of Instruction No. 2." That instruction is as follows: "The Court instructs the jury that if you find from the credible evidence that Joseph and Theresa Accardi did not enter into a contract with the Arthur L. Kniffen Real Estate Company, a corporation, wherein they agreed to pay the said corporation a 5% commission, as alleged in the corporation's petition, then your verdict must be for the defendants on plaintiff's claim."

Plaintiff contends that the instruction was erroneous because it went beyond the pleadings and evidence to the extent it was confusing and misleading to the jury. The

contention apparently being based on this premise: (1) that plaintiff never sought to plead or prove a contract between plaintiff-realtor and defendants-sellers; but, (2) that plaintiff by its pleadings and evidence did seek to show a contract between sellers and purchasers with a provision therein that sellers would pay plaintiff-realtor a 5% commission on the sales price.

Only two witnesses testified for each of the parties, and much of the testimony is consistent or at least not contradicted. It appears that defendants for several years had been engaged in constructing new homes and placing them on the market. They testified that they did their own advertising and had never used the services of a broker. That the Clarks had contacted them personally and had looked at this particular house. On this visit defendants had offered to sell for $26,800 and had further promised to "take the financing." The Clarks promised to return in a day or two. The next day Mrs. Phares, who it is agreed was an authorized saleslady for plaintiff, came by to look at the house. While she was there, the Clarks arrived. At this time, it was agreed that Mrs. Phares through her employer would arrange a loan for Clarks with which to purchase defendants' house.

It was established, that prior to this time plaintiff's saleslady had been working with the Clarks in the sale of their own home, and was assisting them in their efforts to purchase a new residence.

Several days later the defendants, after a call from plaintiff, went to the realty office. There they were shown the sales contract in question. It is sufficient to say that the contract was the usual printed form with blank spaces for the insertion of sales price, description, closing date, earnest money, other possible details and the commission provision previously set out. From the testimony as well as the exhibit, it is shown that the contract offered defendants for their signatures provided a sales price of $26,000 and all being contingent on the sale of another property, which it is assumed

was that originally owned by Clarks. Upon objection by defendants, both of these provisions were marked out and in writing the sale price was changed to $26,800 and the contingency was removed and a closing date set within sixty days. Defendants at this time signed the contract and it was to be taken to Clarks for them to agree to and initial the changes. The sole dispute as to the contract results from this meeting. Defendants both stating the printed line for commission was blank, and plaintiff and his agent both contending the five per cent (5%) was typed in the space provided. Below the lines provided for signature is a printed line with typed figures: "Received $300.00 as earnest money on account of above sale." Immediately below this line was a rubber stamp print "ARTHUR L. KNIFFEN REAL ESTATE CO." Mrs. Phares did have the Clarks initial the changes and about a week later she delivered a copy to defendants. The delay being due to the illness of her son. Mr. Accardi testified that after she was gone he discovered for the first time that "5%" for commission had been filled in. He then called her and was told, "My company would not allow me to sell a house without paying commission." He then went to see Mr. Kniffen and was advised, "You signed the contract in good faith. If the deal goes through, you have to pay commission." At this time, all parties sought advice of attorneys and upon the insistence of Clarks the conveyance was made and the escrow arranged.

Plaintiff's effort to recover the commission claimed is based on a rather unusual if not novel approach. The petition does not allege the employment of plaintiff by defendants to act as broker or in any other capacity, and plaintiff is consistent to the extent of stating in its brief: "Plaintiff in its evidence never sought to *establish* or refute a contract between plaintiff and defendants, to the contrary, all of the evidence admitted on behalf of both plaintiff and defendants went to establish the existence of a

sales contract between the Accardis and Clarks." Since the sales contract was admitted by all parties and was in fact completed as between buyer and seller prior to this action, plaintiff must mean that its efforts were directed toward proving the alleged promise to pay a five per cent commission. This was actually the only material fact in dispute.

For a broker to recover compensation, the authority to act as agent for the seller must be established. This principal-agent relationship can only be created by a contract of employment between them which can be shown in two ways: First, by proving a definite agreement, which may be written or verbal, calling for services and compensation; Second, by showing such acts or course of conduct by the parties that a contractual arrangement is evident or reasonably may be inferred, E. A. Mabes and Company v. Fishman, Mo.App., 284 S.W.2d 21, l. c. 26. Such proof might include ratification by the principal of the previous voluntary acts of the agent, which would be nothing more than a belated confirmation of a contractual arrangement coming within either of the classifications.

In any event, employment must be shown. The rule is stated in 8 Am.Jur., Brokers, Sec. 139: "A broker's compensation is ordinarily a commission on the price or value of the thing sold or exchanged, and his right thereto is dependent upon the terms of his employment contract * * *. To entitle him to any remuneration, however, there must be an actual employment * * *."

This court stated in A. J. Meyer & Co. v. Schulte et al., Mo.App., 189 S.W.2d 183, at 190:

"There can be no doubt of the justness of the principle applied in the cases cited by plaintiff-appellant wherein it is held that an owner of property will not be permitted to escape the payment of a commission to an agent who at the owner's request, either express or implied, procures a purchaser ready, able and willing to buy the property upon the terms fixed by the owner. However, in its argument herein plaintiff-appellant fails to note the distinction between cases where the agent is authorized to represent the owner and cases where the agent has no such authority, as in the case at bar.

"It is important, of course, that an owner of property be not permitted to profit by the labors of others * * * but it is equally important that such others be not permitted to make themselves agents by volunteering to act for the owner without procuring authority, either express or implied, from the owner for that purpose."

Under somewhat similar facts the court stated in Windsor v. International Life Ins. Co., 325 Mo. 272, 29 S.W.2d 1112, l. c. 1115: "He came unheralded and unknown, with a letter of introduction. His approach was for the purpose of making an offer * * *." Then, citing 4 Ruling Case Law, page 299: " * * * to warrant the inference of a previous request, the owner must say or do something tending to prove that he accepted the broker as his agent in the matter—something more than merely selling to the party whom the broker, while acting as a volunteer, brought to him. Of course, the fact that a vendor accepts the benefits of a broker's efforts does not render him liable to the broker for commissions on the theory of ratification, where he did not know that the broker was working in his behalf."

If plaintiff's quoted argument, "Plaintiff in its evidence never sought to establish or refute a contract between plaintiff and defendants" is accepted as accurate, a judgment for it could not have been sustained in any event; however, a rather liberal assumption will be made that plaintiff actually intended to show a contract between plaintiff and defendants to be evidenced by their acts and the commission provision in the sales contract.

On cross-examination Mr. Kniffen testified:

"Q. Mr. Kniffen, to clarify a point, was your corporation hired by Mr. Accardi to perform any services for him? A. In my opinion, yes.

"Q. And it would be incorporated in that contract, is that correct? A. It is incorporated by the 5 per cent written in there and the signature on the contract.

"Q. And the letterhead? A. And the fact it's on our contract."

A portion of Mrs. Phares testimony on cross-examination is significant:

"Q. They drove by—they were aware that house was for sale? A. Yes, we knew that was a nice section out there.

"Q. Go ahead. A. I submitted a contract on the house for $26,000.

"Q. How did that happen? Did you have occasion to go to Mr. Accardi's house? A. Yes, I'd spoken to him and I knew that the price was, it was twenty-six eight, but *my clients* wished to submit an offer, which we do quite frequently, and I submitted a $26,000 offer.

* * * * * *
"Q. When did you start representing both parties? A. Well, I was representing the Clarks prior to the signature of the contract there.

"Q. At what point did you start representing Mr. and Mrs. Accardi? A. When I put a contract on Mr. and Mrs. Accardi's property."

The testimony of both sellers may be summarized by saying that it consisted of an emphatic denial of the employment of plaintiff or a promise to pay any commission.

Plaintiff's cited authorities state an accepted rule that, "An instruction is erroneous which goes beyond the pleadings and the evidence to the extent that it would or could be confusing and mislead the jury." Caddell v. Gulf, M. & O. R. Co., Mo.App., 217 S.W.2d 751, 1. c. 756; Hart v. Midkiff, Mo., 321 S.W.2d 500. The latter case further holding at page 507: "Where evidence in support of an issue submitted has been admitted without objection, a complaint that such issue was not raised by the pleading is not available. Section 509.500; Evett v. Corbin, Mo., 305 S.W.2d 469, 474 [6]. Our liberalized pleading practice tends to emphasize the evidence properly admitted as the standard for determining whether the issues submitted by the instructions are properly in the case."

■ The evidence brought out that the property sale had been completed and the escrow agreement arranged. This left only one question for the jury to consider and that was whether or not defendants owed plaintiff a commission. There is nothing in defendants' instruction No. 2 that could have diverted their attention from that fact.

Defendants had a right to submit a verdict directing instruction based on a negative finding of the only issue shown by the evidence and one essential for plaintiff to recover.

■ Although not asserted by plaintiff, two possible comments should be made: (1) The use of the word "contract" tends toward an abstract submission; and, (2) The reference to the "petition" created an unnecessary hazard for defendants, but did not refer the jury to the pleadings to ascertain the issues, but "rather to identify a thing about which an issue is made by the pleadings." Adams v. City of St. Joseph, 360 Mo. 806, 230 S.W.2d 862, 1. c. 864. The use of either does not appear to have been prejudicial to plaintiff, nor to have materially affected the merits of this action.

For the reasons stated, your Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by J. P. MOR-
GAN, Special Commissioner, is adopted as
the opinion of the Court.

The judgment is affirmed.

ANDERSON, P. J., and WOLFE, J.,
concur.