**Jess HOOVER d/b/a Hoover Agency, Plaintiff-Respondent,**

v.

**Lloyd WHISNER and Wilma Whisner, Defendants-Appellants.**

No. 8217.

Springfield Court of Appeals.

Missouri.

Dec. 2, 1963.

---

**178** ■ ▬▬▬▬▬▬▬▬▬▬▬▬

Frieze & Crandall, Carthage, for defendants-appellants.

McReynolds, Flanigan & Flanigan, Carthage, for plaintiff-respondent.

STONE, Judge.

In this jury-waived action at law to recover for broker's services in selling real estate, the court entered judgment for $540 in favor of plaintiff, Jess Hoover, a licensed real estate broker [Sec. 339.010(1)] doing business as the Hoover Agency with his office in Carthage, Missouri, against defendants, Lloyd Whisner and Wilma Whisner, the owners of the property sold.[1] Defendants appeal.

■ At the outset, we are confronted with plaintiff's-respondent's motion to dismiss the appeal for the alleged failure of defendants'-appellants' brief to comply with the minimum essentials detailed in Rule 83.05. The motion to dismiss is not without merit. Defendants' "points relied on" are: "I. The Court erred in finding for plaintiff and against defendants. II. The finding and judgment of the court is without support in the evidence. III. The finding and judgment of the court are against the weight of the credible evidence. IV. The finding and judgment of the court is contrary to the law." In language as explicit and demanding as it is plain and unambiguous, subdivision (a) (3) of

Rule 83.05 directs that "[t]he points relied on * * * shall show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous"; and, that there may be no reason or opportunity for misunderstanding on the part of those who make a serious and purposeful effort to follow the rule, the same direction is emphasized by repetition and amplified by example in subdivision (e). It has been pointed out repeatedly that the cited subdivisions of Rule 83.05 clearly contemplate particularization in "points relied on"[2] and that the requirements of the rule are not satisfied by discussion and references in the "argument,"[3] for an appellate court has no duty to seine through the entire brief in an effort to ascertain the points on which an appellant depends. Sides v. Contemporary Homes, Mo.App., 311 S.W.2d 117, 122; Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481, 483(2). The quoted "points" in instant defendants' brief are utterly insufficient,[4] and dismissal of the appeal for flagrant violation of Rule 83.05 would be justified.

■ However, this case having been tried upon the facts without a jury, appellate review of the record is de novo upon both the law and the evidence as in suits of an equitable nature. Rule 73.01(d); Sec. 510.310(4); Ennis v. Korb, Mo., 347 S.W.2d 671, 675(1). Cognizant that, in

---

1. All statutory references are to RSMo 1959, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

2. Wipfler v. Basler, Mo., 250 S.W.2d 982, 985(4); Carver v. Missouri-Kansas-Texas R. Co., 362 Mo. 897, 245 S.W.2d 96, 102(11); State ex rel. Joslin v. School Dist. No. 7 of Jasper County, Mo., 302 S.W.2d 497, 500(7); Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42(4); Oertel v. John D. Streett & Co., Mo.App., 285 S.W.2d 87, 98(8).

3. Nibler v. Coltrane, Mo., 275 S.W.2d 270, 274(5); State ex rel. State Highway Com'n. v. Warner, Mo.App., 361 S.W. 2d 159, 162(3); State ex rel. State High-

way Com'n. v. Harrison, Mo.App., 311 S.W.2d 104, 108(4).

4. Walker v. Thompson, Mo., 338 S.W.2d 114, 116–117(6, 7); Magenheim v. Board of Education of School Dist. of Riverview Gardens, Mo., 340 S.W.2d 619, 621 (3); Hardy v. McNary, Mo., 351 S.W.2d 17, 20(4); Kirkwood v. City of St. Louis, Mo., 351 S.W.2d 781, 787(13); Turner v. Calvert, Mo., 315 S.W.2d 118, 120(2); Marlo Coil Corp. v. Grand Park Corp., Mo.App., 348 S.W.2d 610, 612–613(4, 5); State ex rel. Sisson v. Felker, Mo. App., 336 S.W.2d 419, 420(1); Wildermuth v. Fred Medart Mfg. Co., Mo.App., 330 S.W.2d 126, 128(2); Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481.

some equity cases, our Supreme Court has, notwithstanding the insufficiency of appellants' briefs, proceeded to determine whether the judgment nisi was justified upon the record [e. g., Frisch v. Schergens, Mo., 295 S.W.2d 84, 85(1); Turner v. Mitchell, Mo., 297 S.W.2d 458, 460(2)], and mindful that "our primary duty is to litigants rather than to counsel who represent them" [Ambrose v. M. F. A. Co-operative Ass'n. of St. Elizabeth, Mo., 266 S.W.2d 647, 650; Songer v. Brittain, Mo.App., 272 S.W.2d 16, 18], we have concluded to determine in this instance the sufficiency of the evidence to support the judgment, that being a question which may be presented on appeal regardless of whether it was presented in the trial court [Rule 73.01(d); Sec. 510.310 (4)] and that being the principal issue which, as it appears, instant defendants here seek to raise. Compare Mason's Estate v. Sagehorn, Mo.App., 303 S.W.2d 194, 195(2). Accordingly, we overrule plaintiff's motion to dismiss the appeal, albeit with some hesitancy, again confessing our wonderment that capable counsel so frequently assume such not inconsiderable but obviously unnecessary risks in dealing with the interests of their clients [Thompson v. Jenkins, Mo., 330 S.W.2d 802, 803; Moore v. Rone, Mo.App., 355 S.W.2d 398, 401; Steckler v. Steckler, Mo.App., 293 S.W.2d 129, 131] when, as our brethren have pointed out, the procedural provisions now embodied in Rule 83.05 "are clear and simple and easily followed upon a cursory examination" [Onka v. Butkovich, Mo.App., 294 S.W.2d 357, 359] and "[o]bedience * * * calls for no cryptic or unique legal discernment or technique." White v. Nelson, Mo.App., 283 S.W.2d 926, 928.

Mrs. Belle Stutsman, a licensed saleslady for the Hoover Agency, had been "raised" at Sarcoxie, Missouri, and had known defendants "all my life." Having heard that defendants' 30-acre tract on Highway 166 about one mile west of Sarcoxie was for sale, Mrs. Stutsman drove to that tract on Saturday, September 16, 1961. Defendants resided in the same neighborhood but the dwelling house on the 30-acre tract was unoccupied and sorely in need of redecoration and repairs which defendant, Lloyd Whisner, "sort of a builder" who operated a tavern on Saturdays and Sundays, was making "a little at a time." When Mrs. Stutsman reached the dwelling house on September 16, defendant Lloyd was not there but his wife, Mrs. Wilma Whisner, was in the yard.

*Mrs. Stutsman's testimony* as to what occurred on that occasion was, in substance, that she handed her card to defendant Wilma and inquired whether "the place" was for sale to which defendant Wilma replied "yes," and that, when Mrs. Stutsman then asked "if they would list the place for sale" with the Hoover Agency, defendant Wilma said "they didn't care who sold it as long as they got their money." In response to Mrs. Stutsman's subsequent questions, defendant Wilma quoted the price "they were asking for the 30-acre tract" as "$10,-000 after it was cleaned"—"they were going to clean it up," stated that "probably half" of the acreage was tillable and the remainder was pasture, expressed her understanding that there was "a good well," and supplied other information all of which was recorded by Mrs. Stutsman on a listing form used by the Hoover Agency. Mrs. Stutsman knew that the 30-acre tract was owned by defendants as tenants by the entirety but, in view of her conversation with defendant Wilma, she (Mrs. Stutsman) did not think it necessary to obtain authorization to list from defendant Lloyd personally. According to Mrs. Stutsman, "she (defendant Wilma) said that Mr. Whisner had said it was all right"—"she told me to go ahead." However, defendant Wilma knew nothing about the taxes or the loan on the 30-acre tract; and, for information as to these matters, she told Mrs. Stutsman that it would be necessary to talk with defendant Lloyd. Advised by defendant Wilma that the best time to see defendant Lloyd would be "in the evening after five," Mrs. Stutsman returned to the neighborhood shortly after 5 P.M. on the following Monday, Septem-

ber 18, and from the nearby home of her sister unsuccessfully undertook to contact defendant Lloyd over the telephone until about 10 P.M. when she was moved to abandon the effort by the discouraging comment of defendant Wilma that "he is playing cards and no telling what time he will come home." Mrs. Stutsman did not thereafter talk with defendant Lloyd. There was no written contract between the Hoover Agency and defendants.

*Defendant Wilma* testified that, when Mrs. Stutsman asked on Saturday, September 16, whether the Hoover Agency might list the 30-acre tract for sale, "I told her she would have to talk to my husband, that I didn't have anything to do with it." According to defendant Wilma, she neither quoted a price for the tract nor supplied any information concerning it. However, prior to the following Saturday, September 23, defendant Wilma admittedly told her husband of her conversation with Mrs. Stutsman on September 16 and that the latter "was wanting to list the place."

On the afternoon of Saturday, September 23, Carl O. and Mrs. Marie Tibbetts, husband and wife, came to the office of the Hoover Agency in Carthage and, in the absence of another salesman who "had been working with them," talked with salesman Floyd Thomas. Saleslady Stutsman, in the office at the time, told salesman Thomas and the Tibbetts that "she had the listing" of defendants' 30-acre tract and that "they (the Tibbetts) probably would be interested in it." Both Thomas and Mrs. Stutsman testified that they then priced the tract to the Tibbetts at $10,000. Upon trial, Tibbetts said "I don't think they told me a definite price" but he quickly conceded that Thomas and Mrs. Stutsman knew what he wanted to pay, to wit, "around ten or twelve thousand dollars." Mrs. Tibbetts' testimony was to the same effect.

In any event, Thomas drove the Tibbetts to defendants' 30-acre tract that same afternoon. As to what occurred on that occasion, the parties again are in sharp dis-

agreement. The substance of *Thomas' testimony* was that, when he and the Tibbetts reached the dwelling house on the tract, defendant Lloyd "came out" of the house; that Thomas "told him that we had a buyer for the place that we had listed, and asked if it would be all right to show it"; and that defendant Lloyd responded, "come right on in," and "went along with us and showed the place." On the other hand, *defendant Lloyd's version* was that Thomas already had shown the property and he and the Tibbetts were at the Thomas automobile "ready to leave" when defendant Lloyd drove up; that Thomas then identified himself, stated that he had shown the property, commented that "Mrs. Stutsman has told me she was going to get a listing on it," complimented the Tibbetts as "very nice people," and asked "was it all right to show them"; that defendant Lloyd replied "the place isn't showable—it needs a lot of cleaning and improvement done before it should be showed to a buyer"; and that, after "just friendly conversation" for "a very short time," Thomas and the Tibbetts left. The Tibbetts likewise stated that they had looked through the house, which was open, before defendant Lloyd arrived.

Whatever the truth concerning these matters may be (that obviously depending upon the credibility of witnesses and the weight to be accorded to their testimony), the record clearly establishes that the Tibbetts were not acquainted with defendants and did not know their 30-acre tract until Thomas took the Tibbetts to that tract on September 23, and that defendant Lloyd then was apprised that the Tibbetts were presented by the Hoover Agency as prospective purchasers. And, although this was in dispute, the trier of the facts reasonably could have found that defendant Lloyd also was apprised *before* the property was shown on September 23 that, in presenting the Tibbetts, the Hoover Agency was acting in the belief that the 30-acre tract had been listed for sale, for salesman Thomas said "I just told him that *we had a buyer for the place that we had listed * * *.*"

The next day, to wit, on Sunday, September 24, the Tibbetts alone and without contacting the Hoover Agency called on defendant Lloyd and, after some discussion, made an offer of $9,000 for the 30-acre tract. It was two weeks later when, as defendant Lloyd put it, "we just lit on the sale" and he accepted the $9,000 offer. The transaction was consummated on January 15, 1962, more than three months later, in an "insurance office" in Sarcoxie, when defendants executed and delivered to the Tibbetts a warranty deed thereafter recorded on January 16. The only reason for the delay in closing the deal is that suggested by the testimony of salesman Thomas that, when he had talked with the Tibbetts on one occasion in the interim between September 23, 1961, and January 15, 1962, "they hadn't sold their farm." In the same interim, to wit, during the last week in December 1961, salesman Thomas had (so he said) shown the 30-acre tract to another prospective purchaser, one Elmer Wilson, while both defendants were present [cf. Tull v. Starmer, 188 Mo.App. 713, 717, 176 S.W. 511, 513], and on other occasions had shown the tract in defendants' absence.

No one connected with the Hoover Agency knew of the discussions between defendants and the Tibbetts or of their sale agreement until January 1962 when plaintiff Hoover and salesman Thomas, in going through a list of recorded instruments, discovered the conveyance from defendants to the Tibbetts. Within the next five or six days, Hoover and Thomas drove to Sarcoxie, located defendant Lloyd playing dominoes in a pool hall, and demanded payment of the commission for sale of the 30-acre tract to the Tibbetts. Defendant Lloyd summarily rejected that demand; and, as Hoover and Thomas started to leave, Lloyd said "I want you to take *the other tract* off the market," referring to a 23-acre tract owned by defendants which was located some four miles southeast of Sarcoxie. The 23-acre tract *admittedly* had been listed with the Hoover Agency. Defendant Lloyd said that he personally had listed that tract with plaintiff Hoover in Carthage during 1957. On the other hand, plaintiff's evidence was that saleslady Stutsman had obtained the listing of the 23-acre tract from defendant Wilma in the same manner and at the same time, to wit, during September 1961, as the listing of the 30-acre tract had been obtained. And plaintiff here points out the permissible inference that, by directing the Hoover Agency to withdraw the 23-acre tract from the market, defendant Lloyd recognized the validity of that listing while at the same time denying the validity of the listing of the 30-acre tract, although both listings were (so plaintiff insists) made by defendant Wilma contemporaneously.

As defendants emphasize, a mere volunteer is not entitled to a broker's commission [Windsor v. International Life Ins. Co., 325 Mo. 772, 779, 29 S.W.2d 1112, 1115(2); Delahunt v. Thuener, 317 Mo. 465, 296 S.W. 86; A. J. Meyer & Co. v. Schulte, Mo.App., 189 S.W.2d 183, 190(10)] and a contract of employment is essential to recovery of compensation by a broker. Windsor, supra, 325 Mo. loc. cit. 779, 29 S.W.2d loc. cit. 1115(1); Arthur L. Kniffen Real Estate Co. v. Accardi, Mo.App., 365 S.W.2d 84, 87(1); 8 Am.Jur., Brokers, § 158, p. 1077. But the contract may be and frequently is implied. To raise an implied contract, " 'First, the services must have been performed under such circumstances as to give the recipient thereof some reason to think they are not gratuitous, nor performed for some other person, but with the expectation of compensation from the recipient. * * * Second * * * the services must have been beneficial to the person sought to be made liable.' " Windsor, supra, 325 Mo. loc. cit. 781, 29 S.W.2d loc. cit. 1116; Segnitz v. A. Grossenbach Co., 158 Wis. 511, 514, 149 N.W. 159, 160; annotation 43 A.L.R. 842, 843. See Longmire v. Diagraph-Bradley Stencil Mach. Corp., Mo.App., 176 S.W.2d 635, 644(3); 8 Am.Jur., Brokers, § 159, p. 1078.

" [W]here the conversation of the parties, their subsequent conduct, and the circum-

stances of the transaction show the vendor must have known that the services were offered for his benefit—were to be employed in his behalf alone—and that they were being offered by the broker with the expectation of receiving the usual commission for them, the acceptance by the vendor will imply an agreement for the employment of the broker as his agent, and will be sufficient to establish between them the confidential relation of principal and agent. * * * Generally they (brokers) do not work except for pay, and, when they tender their services, it is commonly understood the usual commission will be demanded if the services are accepted and prove beneficial. To support their claim for compensation, plaintiffs were not required to do more than to show from all the facts and circumstances that defendant knew they were brokers, who, in the prosecution of their vocation, were offering their services to him for his benefit, and were not approaching him as the representative of the other party to the proposed transaction. * * * 'When a person under such circumstances avails himself of the services of another, the jury may, from all the circumstances, infer a previous request.' " Ballentine & Boone v. Mercer, 130 Mo.App. 605, 616, 109 S.W. 1037, 1041(6).

" 'Ordinarily, when one person performs valuable services for another who accepts the same, and the circumstances surrounding the transaction do not show the services were to be gratuitous, or, where one person performs services for another at the latter's request, the law implies a contract to pay their reasonable value. Crain v. Miles, 154 Mo.App. 338, 134 S.W. 52; Horn Trunk Co. v. Johns (Mo.App.) 202 S.W. 427. True, no one can make another his debtor without the latter's consent, but even in the absence of a specific request, ordinarily, if one stands by in silence and sees another performing labor for him, of which he accepts and enjoys the benefits, a promise to pay may be inferred. (Citing cases) Where an act done is beneficial, the subsequent assent of the beneficiary will be

sufficient evidence from which the jury will be authorized to find a previous request, and express assent is not necessary, since that may be inferred from the beneficiary's knowledge of the other's acts and the former's silent acquiescence in them. Kerr v. Cusenbary, 60 Mo.App. 558, 563; Strother v. De Witt, 98 Mo.App. 293, 298, 71 S.W. 1129.' " Lewis v. Thompson, 231 Mo. App. 321, 328, 96 S.W.2d 938, 942; Piper v. Allen, Mo.App., 219 S.W. 98, 101(7, 8). In this connection, see Bennett v. Adams, Mo.App., 362 S.W.2d 277, 280–281(7), and cases cited in footnote 4.

■ In considering the instant case in the light of the foregoing principles, we bear in mind that, although we "review the case upon both the law and the evidence as in suits of an equitable nature" [Rule 73.01(d); Sec. 510.310(4)], the same antecedent statute and superseding rule direct that "[t]he judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." And we remain mindful that, although we independently consider the evidence and reach our own conclusions, we usually defer to the findings of the trial court where, as here, the evidence upon salient factual issues is in irreconcilable conflict and the decision necessarily must rest upon the credibility of the witnesses and the weight to be accorded to their testimony. In re Petersen's Estate, Mo., 295 S.W.2d 144, 148(3); Leggett v. Missouri State Life Ins. Co., Mo. (banc), 342 S.W.2d 833, 850(2); Rector v. Tobin Const. Co., Mo.App., 351 S.W.2d 816, 820(1).

■ Without belaboring the facts, we think it clear that, under the authorities hereinbefore cited, the trial court reasonably could have found an implied agreement for employment of the Hoover Agency by defendants. Although there was no mention of the amount to be paid, the Hoover Agency became entitled to reasonable compensation for services rendered, if it was the efficient procuring cause of a sale of the

30-acre tract. Reitz v. O'Neil, Mo.App., 2 S.W.2d 178, 180(7); Stanley v. Whitlow, 181 Mo.App., 461, 463, 168 S.W. 840, 841 (1); Kinder v. Pope, 106 Mo.App. 536, 80 S.W. 315(1). And the only evidence on this subject was that six per cent of the sale price of $9,000, or $540 (the amount of the judgment), would be reasonable compensation.

■ Defendants contend (in the "argument" section of their brief) that, *if* there was any employment of the Hoover Agency, it was to sell the 30-acre tract for $10,000 and that, in the absence of a showing that the Tibbetts were willing to pay that sum, defendants had a right to sell to them for $9,000. After noting "much apparent confusion in the cases," our Supreme Court has suggested that, in such circumstances, "the true rule" probably is that determination of whether the broker is entitled to a commission "depends on whether or not the owner has actually made the obtaining of a certain price a *condition* of paying a commission." Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319, 326(5), and cases there cited. In this connection, we recollect that, when saleslady Stutsman talked with defendant Wilma on September 16, the latter quoted the price "they were *asking* for the 30-acre tract" as "*$10,000 after it was cleaned*"—"they were going to clean it up." From the testimony of defendant Lloyd, we are informed that, when salesman Thomas showed the dwelling house on September 23, it still was in such condition that substantial redecoration and repairs were required to make it tenantable. It is not unreasonable to infer that if $10,000 was to have been the "asking" price after the dwelling house had been put in tenantable condition, defendants might have been

willing to sell for less prior to redecoration and repairs. In the peculiar and particular circumstances of this case, we think that it was an issue of fact whether sale at the "asking" price of $10,000 quoted by defendant Wilma to saleslady Stutsman "was imposed as an express condition to the payment of compensation" to the Hoover Agency [Martin, supra, 293 S.W.2d loc. cit. 326] and that we properly should defer to the finding of the trial court, inherent in the judgment for plaintiff, that payment of compensation was not conditioned upon production of a prospective purchaser ready, able and willing to pay $10,000. Contrast Gibson v. Pleasant Valley Development Co., 320 Mo. 828, 8 S.W.2d 828; Hughes & Thurman v. Dodd, 164 Mo.App. 454, 146 S.W. 446.

■ In other words, we are of the opinion that this situation falls within the general rule that, if property is listed with a broker for sale at a certain price and the broker is the efficient procuring cause of a subsequent sale, he is entitled to compensation for his services even though the final negotiations are conducted by the owners, who, in order to make a sale, accept a price lower than that quoted to the broker.[5] This rule recognizes that, as a practical matter, "[i]f the agent employed to sell finds the purchaser, he has performed the principal service of his employment" [May v. Avansino, Mo.App., 185 S.W. 1178, 1180; Brewer v. Gowin, Mo.App., 241 S.W.2d 275, 280] and that a contrary holding would make it easy and convenient for any owners to relieve themselves of liability to pay for broker's services by the simple expedient of initially pricing property at one figure and thereafter selling at a slightly-reduced price al-

5. Axsom v. Thompson, 239 Mo.App. 732, 197 S.W.2d 326, 329(1); Julius Haller Realty Co. v. Jefferson-Gravois Bank, Mo.App., 144 S.W.2d 174, 176(2); Studt v. Leiweke, Mo.App., 100 S.W.2d 30, 33–34(1); Bopp v. Jetama Inv. Co., 231 Mo.App. 815, 96 S.W.2d 877, 880(5); Row- land v. Progressive Inv. Co., Mo.App., 202 S.W. 257, 258(2); May v. Avansino, Mo.App., 185 S.W. 1178, 1180(2, 4); Smith v. Truitt, 107 Mo.App. 1, 80 S.W. 686, 687(1); annotation 46 A.L.R.2d 848, 852; 8 Am.Jur., Brokers, § 189, p. 1100; id., § 190, p. 1101.

though to a purchaser produced by the broker.[6] It may be appropriate to observe here that instant defendants-appellants do not undertake to present, even in the "argument" section of their brief, any issue as to whether the Hoover Agency was the efficient procuring cause of sale of the 30-acre tract to the Tibbetts, or as to revocation of the broker's agency, or as to the broker's abandonment of the Tibbetts as prospective purchasers.

In their "argument," defendants do assert that certain answers by the Tibbetts, called as plaintiff's witnesses, demonstrate that, in showing the 30-acre tract, the Hoover Agency acted as agent for the Tibbetts and not for defendants; and, on the premise that plaintiff was bound by such testimony, defendants insist that they could have no liability herein. Windsor, supra, 325 Mo. loc. cit. 781, 783, 29 S.W.2d loc. cit. 1116(5), 1117(8, 9). If the language put in the Tibbetts' mouths on cross-examination were fairly susceptible of the construction urged by defendants (which we doubt), nevertheless saleslady Stutsman specifically denied that she was acting on behalf of the Tibbetts and the testimony of salesman Thomas tends to contradict defendants' theory. Furthermore, the Tibbetts definitely stated that they were not to pay a commission to the Hoover Agency and that "the commission, if any," was to be paid by the owners of any property purchased by them. Cf. Miller v. Gotsman, Mo.App., 253 S.W.2d 407, 410(2). " * * * [A] plaintiff is not bound by the testimony of his own witnesses in so far as such testimony is contradicted by a plaintiff's other evidence" [Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, 298(4)] or " 'where there are other facts and circumstances in the case from which the jury may draw a contrary inference.' " Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50(2); Colley v. Cox, Mo.App., 266

S.W.2d 778, 786. Even if this point were raised properly, it would be without merit.

Being unable to say, after painstaking examination of the record, that the judgment for plaintiff was "clearly erroneous," it becomes our plain duty to affirm it. Rule 73.01(d); Sec. 510.310(4). It is so ordered.

RUARK, P. J., and HOGAN, J., concur.

---

6. Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319, 326; LeCompte v. Sanders, Mo.App., 229 S.W.2d 298, 302; Axsom,

supra, 197 S.W.2d loc. cit. 329; Hovey v. Aaron, 133 Mo.App. 573, 113 S.W. 718, 721; annotation 12 A.L.R.2d 1360, 1372.